**PRECEDENTIAL**

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————

No. 19-2700

———————

AMILCAR ANTONIO FRANCISCO-LOPEZ,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,

Respondent

———————

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No.: A041-811-480)
Immigration Judge: Nelson Vargas Padilla

———————

Argued February 3, 2020

Before:  SHWARTZ, SCIRICA, and RENDELL,
Circuit Judges

(Opinion Filed: May 15, 2020)

Lisa J. Kasdan **(Argued)**
Marcia Kasdan
Law Office of Marcia S. Kasdan
127 Main Street
1st Floor
Hackensack, NJ 07601

                                        Counsel for Petitioner

Jeffrey R. Meyer
Craig Alan Newell, Jr. **(Argued)**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

                                        Counsel for Respondent

————————

O P I N I O N

————————

**RENDELL**, <u>Circuit Judge</u>:

In 2012, Amilcar Francisco Lopez (Francisco), a lawful permanent resident of the United States, pleaded guilty to attempted second degree grand larceny in New York state.

2

More than five years later, Francisco was charged with removability on the grounds that his guilty plea constituted a conviction for a crime involving moral turpitude (CIMT) under 8 U.S.C. § 1182(a)(2)(A)(i)(I). Francisco challenged his removal but two Immigration Judges (IJs) and eventually the Board of Immigration Appeals (BIA) denied his challenges. The BIA ruled that it would retroactively apply the new standard for theft-related CIMTs that it had promulgated in *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847 (B.I.A. 2016), to Francisco's case and that, under that standard, Francisco's 2012 conviction rendered him removable.

Francisco now petitions for review of the BIA's order. We grant review and join several other circuits in ruling that the BIA should not have retroactively applied *Diaz-Lizarraga*. *See Monteon-Camargo v. Barr*, 918 F.3d 423 (5th Cir. 2019); *Garcia-Martinez v. Sessions*, 886 F.3d 1291 (9th Cir. 2018); *Obeya v. Sessions*, 884 F.3d 442 (2d Cir. 2018); *Lucio-Rayos v. Sessions*, 875 F.3d 573 (10th Cir. 2017). We will vacate the BIA's order and remand to the BIA for further proceedings.

**I**

Francisco is a citizen of Guatemala who was accorded lawful permanent resident status in the United States in 1989. In 2012, Francisco pleaded guilty to a charge of attempted grand larceny in the second degree in violation of New York Penal Law § 155.40(2)(b). The charging document shows that Francisco obtained a stolen laptop. Francisco then contacted the laptop's owner and demanded that the owner reimburse him for the amount of money Francisco had paid for the laptop. During this exchange, Francisco sent the laptop's owner sexually explicit pictures that Francisco had found on the

laptop. The owner then contacted the police and Francisco was arrested and charged with attempted second degree grand larceny. After pleading guilty, Francisco was sentenced to five years of probation. An order of protection for the victim was placed against him. Francisco completed his probation in 2017.

In 2018, Francisco returned to Newark Liberty International Airport from a trip abroad and sought admission to the United States as a returning lawful permanent resident. Instead, Francisco was classified as an arriving alien and an applicant for admission. He was deemed inadmissible to the United States under 8 U.S.C. § 1182(a)(2)(A)(i)(I) as an alien convicted of a CIMT and was detained by the Department of Homeland Security Immigration and Customs Enforcement (DHS-ICE) at the Elizabeth Detention Center in Elizabeth, New Jersey. Francisco was served with a Notice to Appear alleging that he was subject to removal as an alien who had been convicted of CIMT based on his 2012 conviction for attempted grand larceny.

Francisco filed a motion to terminate the removal proceedings, arguing that his 2012 conviction was not a CIMT. An IJ denied the motion to terminate in an oral decision. After the denial, Francisco filed an application for discretionary relief of cancellation of removal as a lawful permanent resident. A second IJ orally denied Francisco's application for discretionary relief. Francisco appealed both decisions to the BIA.

The BIA dismissed Francisco's appeal and adopted and affirmed the IJs' rulings. It first ruled that Francisco was removable for having committed a CIMT. The BIA decided

4

that its 2016 precedent from *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847, in which the BIA promulgated a new, broader standard for determining whether a larceny offense constituted a categorical CIMT, should be applied retroactively to Francisco's 2012 conviction. In *Diaz-Lizarraga*, the BIA noted that "[f]rom the Board's earliest days we have held that a theft offense categorically involves moral turpitude if—and only if—it is committed with the intent to *permanently* deprive an owner of property." *Id.* at 849 (emphasis in original). But, based on the BIA's analysis of developments in criminal law since adopting that standard, the BIA decided to "update [its] existing jurisprudence," *id.* at 852, to require that "a theft offense is a crime involving moral turpitude if it involves an intent to deprive the owner of his property either permanently *or* under *circumstances where the owner's property rights are substantially eroded*," *id.* at 853 (emphasis added).

In Francisco's case, under the expanded *Diaz-Lizarraga* standard, the BIA held that New York's second degree grand larceny statute "defines a categorical CIMT because it requires the accused to take or withhold property with the intent to permanently *or virtually permanently* appropriate it or deprive the rightful owner of its use." App. 7 (citing *Matter of Obeya*, 26 I. & N. Dec. 856, 858–61 (B.I.A. 2016); *Diaz-Lizarraga*, 26 I. & N. Dec. at 847, 854) (emphasis added). Thus, the BIA ruled that Francisco was removable.

The BIA also upheld the second IJ's denial of discretionary relief and rejected Francisco's claim that the IJ's actions had violated his due process rights.

Francisco then timely filed this appeal.

# II[1]

## A. Crime Involving Moral Turpitude

Under the Immigration and Nationality Act (INA), an alien who commits a "crime involving moral turpitude" is "inadmissible," 8 U.S.C. § 1182(a)(2)(A)(i)(I), and can be removed, § 1227(a)(2)(A)(i). Although the INA does not define the phrase "moral turpitude," the BIA defines it generally as "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general."

---

[1] We lack jurisdiction to review a final order of removal issued against an alien who is removable by reason of having committed a crime of moral turpitude. 8 U.S.C. § 1252(a)(2)(C); *see Mayorga v. Att'y Gen.*, 757 F.3d 126, 128 n.2 (3d Cir. 2014). We do, however, have jurisdiction to review any constitutional claims or questions of law presented on appeal. *See Mayorga*, 757 F.3d at 128 n.2. "[W]e review the BIA's legal conclusions *de novo* subject to the principles of deference set forth in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)." *Mahn v. Att'y Gen.*, 767 F.3d 170, 173 (3d Cir. 2014). Thus, we have jurisdiction here, where the case before us presents a question of law.

Francisco argues that venue is improper in this court. But Francisco waived this objection when he conceded that venue is proper here "pursuant to 8 U.S.C. § 1252(b)(2), as this judicial circuit is where the proceedings were completed." Pet'r Br. at 2; *Khouzam v. Att'y Gen.*, 549 F.3d 235, 249 (3d Cir. 2008) (indicating that 8 U.S.C. § 1252(b)(2) is non-jurisdictional and therefore subject to waiver).

*Partyka v. Att'y Gen.*, 417 F.3d 408, 413 (3d Cir. 2005) (quoting *Knapik v. Ashcroft*, 384 F.3d 84, 89 (3d Cir. 2004)).

When, as in this case, the government seeks to remove a noncitizen under the INA on the basis of a prior state conviction for a CIMT, we, as well as the BIA, "generally employ a 'categorical approach' to determine whether the state offense" qualifies as a CIMT. *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013); *see Ildefonso-Candelario v. Att'y Gen.*, 866 F.3d 102, 104 (3d Cir. 2017). Under this approach, we analyze the statute pursuant to which the noncitizen was convicted "to ascertain the least culpable conduct necessary to sustain [a] conviction under the statute." *Ildefonso-Candelario*, 866 F.3d at 104 (quoting *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 465–66 (3d Cir. 2009) (alteration in original)). "As a general rule, a criminal statute is determined to define a crime as categorically involving 'moral turpitude only if all of the conduct [the statute] prohibits is turpitudinous.'" *Javier*, 826 F.3d at 130 (quoting *Partyka*, 417 F.3d at 411) (alteration in original). In the course of this inquiry, we focus only "on the elements, rather than the facts, of a crime." *Descamps v. United States*, 570 U.S. 254, 263 (2013); *see also Jean-Louis*, 582 F.3d at 465 (quoting *Knapik*, 384 F.3d at 88).

## B. Retroactivity of *Diaz-Lizarraga*

In Francisco's case, the BIA retroactively applied the expanded intent requirement it adopted in *Diaz-Lizarraga*, determining that New York second degree grand larceny qualified since the intent element under New York law aligns with the CIMT intent requirement that "the owner's property

7

rights are substantially eroded." App. 6.[2] This was not the first case in which it did so. In the BIA's published decision in *Matter of Obeya*, the BIA had retroactively applied *Diaz-Lizarraga* where Obeya had been convicted of New York petit larceny. *See Matter of Obeya*, 26 I. & N. Dec. 856 (B.I.A. 2016), *rev'd by Obeya v. Sessions*, 884 F.3d 442 (2d Cir. 2018).[3] The BIA here reasoned that because "larceny under New York law defines a categorical CIMT because it requires the accused to take or withhold property with the intent to permanently *or virtually permanently* appropriate it or deprive the rightful owner of its use," it fell within its new expanded CIMT definition. App. at 7 (citing *Obeya*, 26 I. & N. Dec. 858-61).[4] The BIA, "[a]pplying the reasoning of *Obeya*," held in Francisco's case that N.Y. Penal Law § 155.40(2) "also defines

---

[2] Because the BIA explicitly ruled that its application of *Diaz-Lizarraga* in Francisco's case was retroactive, *see* App. 7, we do not conduct an independent analysis of whether the BIA's application of *Diaz-Lizarraga* was retroactive. *See, e.g.*, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (holding that application of a new rule is retroactive if it "attaches new legal consequences to events completed before its enactment").

[3] More recently, the BIA issued an unpublished, non-precedential decision by one judge that reversed course and found that *Diaz-Lizarraga* was not to be applied retroactively, but we do not consider this non-precedential and unpublished BIA decision, which is, "[a]t most . . . persuasive authority." *Mahn*, 767 F.3d at 173 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

[4] As we discuss below, the Second Circuit disagreed with the BIA's retroactive application of *Diaz-Lizarraga*.

8

a categorical CIMT" and that Francisco was therefore removable. *Id.*[5]

Retroactivity is not favored in the law. This applies with full force to the BIA's retroactive application of new law. *See, e.g.*, *Velasquez-Garcia v. Holder*, 760 F.3d 571, 579 (7th Cir. 2014) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). The Supreme Court has explained in the context of retroactive administrative rulemaking that our suspicion of retroactivity:

> is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principle that the legal effect of conduct should ordinarily be assessed under the

---

[5] At the time the BIA rendered its decision in Francisco's case, the BIA's decision in *Obeya* had been reversed by the Second Circuit. Retroactivity aside, we could not affirm the BIA's decision on "the grounds upon which the agency acted," *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943), because the BIA relied on precedent that was no longer good law. *See Henriquez Dimas v. Sessions*, 751 F. App'x 368, 370 (4th Cir. 2018) (remanding to the BIA when the BIA opinion relied on a prior precedential BIA opinion interpreting the definition of a CIMT that had since been reversed by the court of appeals).

law that existed when the conduct took place has timeless and universal appeal.

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) (internal quotation marks, footnotes, and citations omitted). In the immigration context, our aversion to retroactivity is particularly significant and is generally informed by "the longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien." *INS v. St. Cyr*, 533 U.S. 289, 320 (2001) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 449 (1987)).

To determine whether an administrative agency like the BIA may retroactively apply a new rule in an adjudication, we look first to the Supreme Court's guidance in *SEC v. Chenery Corp.*, 332 U.S. 194 (1947). *Chenery* stated that the ill effects of retroactivity in an adjudication by an administrative agency:

> must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law.

*Id.* at 203.

In order to implement *Chenery*'s balancing test, we and several other courts of appeals apply a framework first laid out by the District of Columbia Circuit in *Retail, Wholesale & Dep't Store Union, AFL-CIO v. NLRB*, 466 F.2d 380 (D.C. Cir. 1972). We first indicated our preference for this framework in our decision in *E.L. Wiegand Division v. NLRB*, 650 F.2d 463,

10

471 (3d Cir. 1981), and formally adopted it in *Laborers' International Union of North America, AFL-CIO v. Foster Wheeler Corporation*, 26 F.3d 375, 392 (3d Cir. 1994). Under this well-established standard, an agency may not retroactively apply a new rule of law in an adjudication if retroactive application would create "manifest injustice." *Laborers' Int'l*, 26 F.3d at 390.[6] To determine whether retroactivity would create "manifest injustice," we, again following the District of Columbia Circuit in *Retail, Wholesale*, have applied a five-factor test to guide our analysis. *Laborers' Int'l*, 26 F.3d at 392. Specifically, we look to:

> (1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well established practice or merely occupies a void in an unsettled area of law, (3) the extent to which the party against whom the new holding is applied in fact relied on the former rule, (4) the degree of the burden imposed, and (5) the statutory interest in application of this new rule.

*Allegheny Ludlum Corp. v. NLRB*, 301 F.3d 167, 180 (3d Cir. 2002) (quoting *Laborers' Int'l*, 26 F.3d at 392). We now proceed to apply this test to the BIA's retroactive application of *Diaz-Lizarraga* in Francisco's case.[7]

---

[6] "[A]bsent a manifest injustice," we "follow the [agency's] retrospectivity ruling." *Laborers' Int'l*, 26 F.3d at 390.

[7] The Second Circuit and Ninth Circuit have previously analyzed these factors in determining that *Diaz-Lizarraga* may not be retroactively applied. *See Garcia-Martinez*, 886 F.3d 1291; *Obeya*, 884 F.3d 442. The Fifth Circuit and the Tenth

11

The first factor looks to "whether the particular case is one of first impression." *Allegheny Ludlum*, 301 F.3d at 180 (quoting *Laborers' Int'l*, 26 F.3d at 392). "[A] case of 'first impression' is a case in which one party successfully urged the [agency] to change its rule while a case of 'second impression' is any subsequent case brought before the [agency] on the same issue." *Beneli v. NLRB*, 873 F.3d 1094, 1099 (9th Cir. 2017) (citing *Retail, Wholesale*, 466 F.2d at 383–84, 387). Because "[e]very case of first impression has a retroactive effect," the first factor weighs in favor of allowing retroactive application of the new rule in cases of first impression. *Laborers' Int'l*, 26 F.3d at 392 (quoting *Chenery*, 332 U.S. at 203).

This factor favors Francisco because his case clearly did not present a question of first impression. *Diaz-Lizarraga* was the case of first impression, because the BIA changed the intent necessary for a larceny crime to involve moral turpitude. *See Diaz-Lizarraga*, 26 I. & N. Dec. at 854–55. As this case was brought subsequent to *Diaz-Lizarraga*, it is a case of second impression. *See Obeya*, 884 F.3d at 445 (holding it was presented with a case of second impression); *Garcia-Martinez*, 886 F.3d at 1295 (holding, in the alternative, that it was presented with a case of second impression).

Second, we consider "whether the new rule represents an abrupt departure from well established practice or merely occupies a void in an unsettled area of law." *Allegheny Ludlum*, 301 F.3d at 180 (quoting *Laborers' Int'l*, 26 F.3d at

Circuit decided this question without reference to the five-factor test but reached the same result. *See Monteon-Camargo*, 918 F.3d 423*; Lucio-Rayos*, 875 F.3d 573.

392). We find that the second factor also favors Francisco. *See, e.g.*, *Garcia-Martinez*, 886 F.3d at 1295 ("[O]n its face, the decision to abandon the literally-permanent deprivation test was a rather abrupt change in the law, to say the least."). The government argues that *Diaz-Lizarraga* was not an "abrupt departure" from prior law because the new *Diaz-Lizarraga* standard simply formalized BIA precedent that had been iteratively expanding the old standard without explicitly overruling or replacing it. It makes a number of arguments based on several BIA cases in which an intent to permanently deprive may have been presumed or used to distinguish from a temporary taking, urging that these precedents may have "led the Board in Francisco's case to the same conclusion that the New York offense of second-degree grand larceny involves moral turpitude." Resp. Br. at 31.

But these arguments are belied by the very text of the BIA's decision in *Diaz-Lizarraga*. There, the BIA explicitly indicated that it intended the change to constitute an "update [to the BIA's] existing jurisprudence," 26 I. & N. Dec. at 852, that the BIA would not "continu[e] to adhere to" its prior standard, *id.* at 854, and that the BIA "overruled" any prior decisions that "required a literal intent to permanently deprive in order for a theft offense to be a crime involving moral turpitude," *id.* at 855. This indicates that the BIA intended to and did make an "abrupt departure from well established practice." *Allegheny Ludlum*, 301 F.3d at 180.

Moreover, we find the Second Circuit's rigorous analysis and rejection of the government's other arguments relating to this factor to be helpful to our analysis. In *Obeya*, the court noted that although the BIA had in certain cases presumed intent to permanently deprive where the offense

13

statute did not explicitly require it, the BIA never actually "dispense[d] with the requirement of an intent to permanently deprive" before *Diaz-Lizarraga*. *See Obeya*, 884 F.3d at 446–47 (discussing *Matter of Jurado-Delgado*, 24 I. & N. Dec. 29 (B.I.A. 2006) and *Matter of Grazley*, 14 I. & N. Dec. 330 (B.I.A. 1973)).

We also agree with the *Obeya* court's reasoning that the BIA's reliance on the changes in state theft statutes over time undermines rather than supports the government's argument. 884 F.3d at 445–46. The BIA had originally based its intent requirement on a state-law distinction between permanent and temporary takings that is no longer relevant.[8] *Diaz-Lizarraga*, 26 I. & N. Dec. at 851. In *Diaz-Lizarraga*, the BIA admitted that its "case law ha[d] not kept pace with [those] developments" in state criminal laws and, therefore, it was required to "update [its] existing jurisprudence" by expanding the intent requirement for theft CIMTs. *Diaz-Lizarraga*, 26 I. & N. Dec. at 852; *see Obeya*, 884 F.3d at 445–46. Contrary to the government's urging, this context only bolsters our conclusion that, in *Diaz-Lizarraga*, the BIA abruptly departed from prior practice in order to "update [its] existing jurisprudence" to reflect modern trends in state criminal laws. *See Diaz-Lizarraga*, 26 I. & N. Dec. at 852. Accordingly, we agree with the Second Circuit that "[g]iven the BIA's case law . . . and the Board's own descriptions of its precedents," *Diaz-Lizarraga* was an express and abrupt departure from

---

[8] This distinction, as the government notes, is now largely anachronistic after most states adopted the Model Penal Code's expanded intent requirement for theft crimes. *See Diaz-Lizarraga*, 26 I. & N. Dec. at 851–52.

14

longstanding BIA practice. *Obeya*, 884 F.3d at 448. The second factor therefore favors Francisco.

Third, we consider the extent to which the party against whom the new holding is applied relied on the former rule. The government argues that we must look only to whether Francisco "in fact relied" on the BIA's prior precedent in deciding whether to plead guilty to attempted second degree grand larceny, citing our precedent in *Allegheny Ludlum* and *Laborers' International*. *See Allegheny Ludlum*, 301 F.3d at 180 (quoting *Laborers' Int'l*, 26 F.3d at 392). The government asserts that we should find that this factor bolsters its position because Francisco has not presented any evidence that he actually relied on the BIA's prior precedent when he pleaded guilty in 2012.

We take this opportunity to clarify our analysis of the reliance factor as we will consider it in the immigration context. As a general rule, an alien defendant's decisions in a criminal proceeding, especially his or her decisions about whether to plead guilty, implicate distinctively weighty reliance interests. The Supreme Court has observed that "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (internal footnote omitted); *see also St. Cyr*, 533 U.S. at 322 ("[A]lien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions."). In fact, defense counsel has a duty, under the Sixth Amendment, to advise alien-defendants of the immigration consequences of a guilty plea, including whether the offense is a removable offense. *Padilla*, 559 U.S. at 369.

15

In the immigration context, therefore, defendants in criminal proceedings are highly likely to rely on BIA precedent to determine whether they will be deported if they are convicted of a particular state crime. For this reason, the reliance factor operates quite differently in the immigration context from the way in which it operates in other contexts where courts sometimes find that the adjudication implicates "relatively modest stakes." *Laborers' Int'l*, 26 F.3d at 378.

For this reason, we hold that, in immigration cases, the third factor will favor the party challenging retroactivity if it would have been reasonable for the alien to have relied on the BIA's prior precedent. We follow the Second, Seventh, and Ninth Circuits in distinguishing our analysis of the reliance factor in the immigration context. *See Obeya*, 884 F.3d at 448 ("[W]hen conducting retroactivity analysis in the immigration context, we look to whether it would have been reasonable for a criminal defendant to rely on the immigration rules in effect at the time that he or she entered a guilty plea."); *Velasquez-Garcia*, 760 F.3d at 582 (When analyzing the reliance factor, "the critical question is not whether a party actually relied on the old law, but whether such reliance would have been reasonable."); *cf. Garcia-Martinez*, 886 F.3d at 1295 ("[W]e will presume that [the petitioner] was aware of the then existing rule when he pled guilty. . . ."). Because it would have been reasonable for Francisco to rely on the BIA's prior precedent in this case, we find that this factor favors Francisco.

Fourth, we consider "the degree of the burden imposed" by retroactive application of a new rule. *Allegheny Ludlum*, 301 F.3d at 180 (quoting *Laborers' Int'l*, 26 F.3d at 392). This factor also favors Francisco. Removal from the United States would impose a severe burden on him. *See Padilla*, 559 U.S.

16

at 365 ("We have long recognized that deportation is a particularly severe 'penalty' . . . ." (quoting *Fong Yue Ting v. United States*, 149 U.S. 698, 740 (1893))); *Obeya*, 884 F.3d at 445 ("'[R]emoval from the United States, with life-changing consequences,' is a 'massive' burden for any immigrant." (quoting *Lugo v. Holder*, 783 F.3d 119, 121 (2d Cir. 2015))); *Garcia-Martinez*, 886 F.3d at 1295 ("[T]here can be little doubt that the change in the rule—the new rule—will impose a new and severe burden upon [the petitioner].") (footnote omitted). In any case, the government concedes that this factor favors Francisco.

Lastly, we consider "the statutory interest" in applying the new rule retroactively. *Allegheny Ludlum*, 301 F.3d at 180 (quoting *Laborers' Int'l*, 26 F.3d at 392). This factor, like each of the other four factors, favors Francisco. As the government points out, the BIA has authority to assess, subject to judicial review, which criminal statutes create categorical CIMTs and to ensure that its assessments are uniformly administered in removal proceedings. But, in this case, we see no discernable BIA uniformity interest in retroactively applying *Diaz-Lizarraga*: the BIA had uniformly applied the prior standard for more than seven decades before deciding to change course. *See Garcia-Martinez*, 886 F.3d at 1295-96 (holding that the BIA's uniformity interests do not "have a great deal of weight in a case like this one where the BIA lived with the preexisting rule for seven decades and, in fact, until just a couple of years ago would have treated [the petitioner] as a person who had not committed CIMTs"); *Obeya*, 884 F.3d at 449 (holding that uniformity "has hardly been a consistent feature of immigration law" and that "the government has no compelling interest in removing individuals for crimes that were not considered to reflect so negatively on their character at the time

17

the offenses were committed"). This factor therefore favors Francisco.

Each of the five factors that guide our "manifest injustice" inquiry favor Francisco. Accordingly, we hold that the BIA erred in retroactively applying the newly expanded theft CIMT definition it set forth in *Diaz-Lizarraga* in Francisco's removal proceedings. We will vacate the BIA's order and remand to the BIA.[9]

## C. Discretionary Relief

Francisco also petitions for review of the BIA's denial of his application for discretionary cancellation of removal.

---

[9] As the government correctly urges, instead of conducting our own *de novo* inquiry into whether N.Y. Penal Law § 155.40(2) constitutes a categorical CIMT under the previous CIMT test, we remand Francisco's case to the BIA for further proceedings on that question. *See, e.g.*, *Gonzales v. Thomas*, 547 U.S. 183, 186 (2006) (per curiam) (holding that we are "not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach [our] own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotation marks and citations omitted). In addition to the government's argument, we also note that the BIA did not explore the contours of the New York statute under the old CIMT definition and that N.Y. Penal Law § 155.40(2) contains an extortion element that might distinguish it from other larceny offenses such as the New York petit larceny offense that was at issue in the *Obeya* case. *See Obeya*, 884 F.3d at 443.

18

Francisco alleges that the IJ who denied his application violated his "rights to due process" by "mischaracterizing prior actions of the petitioner as evidence of 'lack of respect for the law'; giving no consideration to a long legal work history and the deep connections to his United States citizen children; and improperly weighting the negative factors in adjudicating the application for relief from removal." Pet'r Br. at 27. Because these allegations are simply artfully labelled challenges to the BIA's unreviewable discretionary denial of Francisco's application for cancellation of removal, we do not have jurisdiction. *Patel v. Att'y Gen.*, 619 F.3d 230, 232 (3d Cir. 2010).

## III

We will grant the petition for review, vacate the BIA's order, and remand to the BIA for further proceedings.