**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3092
_____

LUIS AMAURIS DIAZ ALMANZAR,
                                                  Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of
the Board of Immigration Appeals
(Agency No. A058-293-120)
Immigration Judge: Jason L. Pope
_____

Argued November 17, 2022

Before: AMBRO, KRAUSE, and BIBAS *Circuit Judges*

(Opinion Filed: July 28, 2023)

Michael Antzoulis [ARGUED]
Seton Hall University School of Law
One Newark Center
1109 Raymond Boulevard
Newark, NJ 07102

Stephanie E. Norton, [ARGUED]
Benjamin N. Cardozo School of Law
55 5th Avenue
11th Floor
New York, NY 10003
          *Counsel for Petitioner*

Sunah Lee [ARGUED]
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
            *Counsel for Respondent*

_____

**OPINION**<sup>*</sup>

_____

KRAUSE, *Circuit Judge*

Here we are called on to decide whether New Jersey's second-degree robbery statute, N.J. Stat. Ann. § 2C:15-1(a), qualifies as a crime involving moral turpitude (CIMT) under the then-applicable standard the Board of Immigration Appeals (BIA) used for morally turpitudinous theft offenses. Because the BIA failed to apply the categorical approach properly when it concluded second-degree robbery under New Jersey law was necessarily a CIMT, and under the categorical approach none of the elements of New Jersey's second-degree robbery statute necessarily involve moral turpitude, we will grant Almanzar's petition, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

I.    **BACKGROUND**

Petitioner Luis Amauris Diaz Almanzar (Almanzar) is a 31-year-old native and citizen of the Dominican Republic who was admitted to the United States as a lawful permanent resident in 2008. In 2014, Almanzar pleaded guilty to conspiracy to commit second-degree robbery under N.J. Stat. Ann. §§ 2C:5-2, 2C:15-1, and unlawful possession of a weapon under N.J. Stat. Ann. § 2C:39-4(a) in connection with

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Almanzar's involvement in the attempted robbery of Giovanni Raffo. While he was serving his sentence, the Government initiated removal proceedings against Almanzar, charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(i) based on the belief that Almanzar's second-degree robbery offense qualified as a CIMT.[1]

Although the Immigration Judge (IJ) initially sustained Almanzar's CIMT charge, it exercised its sua sponte authority to reopen Almanzar's proceedings under 8 C.F.R. § 1003.23(b)(1) after our Court decided *Francisco-Lopez v. Att'y Gen.*, 970 F.3d 431 (3d Cir. 2020). There, we held that the BIA could not retroactively apply the new, broader standard it adopted in *Matter of Diaz-Lizarraga*, 26 I. & N. Dec. 847 (BIA 2016), for determining whether a theft offense constitutes a CIMT, and that where, as here, a petitioner's conviction predates *Matter of Diaz-Lizarraga*, the BIA must apply its previous standard under which a theft offense constitutes a CIMT only when it involves an "intent to permanently deprive." *Francisco-Lopez*, 970 F.3d at 434 (quotation omitted). Applying this standard and concluding intent to permanently deprive was not a requirement of a conviction under § 2C:15-1, the IJ dismissed Almanzar's CIMT charge.

The BIA reversed. In an unpublished one-member decision, the BIA held that § 2C:15-1 satisfied the culpable mental state requirement of a CIMT because it required knowledge and that it satisfied the actus reus requirement because, purporting to apply the categorical approach, robbery "is now, and always has been a categorical CIMT." AR at 124. The IJ, bound by the BIA's decision, sustained

---

[1] The Government also charged Almanzar as removable under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1227(a)(2)(C), though these additional charges are not relevant to this case. The Government dropped the § 1227(a)(2)(A)(iii) aggravated felony charge prior to Almanzar's first hearing, and the IJ exercised its sua sponte authority to dismiss Almanzar's § 1227(a)(2)(C) charge after it found New Jersey's unlawful possession statute, N.J. Stat. Ann. § 2C:39-4, to be overbroad. The IJ also dismissed Almanzar's conspiracy-based aggravated felony charge after concluding that N.J. Stat. Ann. § 2C:5-2 did not require the commission of an overt act in furtherance of the conspiracy.

the CIMT charge on remand, and Almanzar appealed. This appeal was dismissed by the same BIA judge in another unpublished one-member decision in which the BIA summarily concluded it had correctly applied the categorical approach and that its prior decision was now the law of the case. This petition for review followed.

## II.   DISCUSSION[2]

At its core, the merits of Almanzar's petition reduce to whether, under the categorical approach, the elements of § 2C:15-1 necessarily involve moral turpitude.[3]  Under this approach, we "consider whether the least culpable conduct hypothetically necessary to sustain a conviction under the statute would also be covered by the federal statute." *Larios v. Att'y Gen.*, 978 F.3d 62, 67 (3d Cir. 2020) (internal quotation marks and citation omitted). "A categorical match occurs if a state statute's elements define a crime identical to or narrower than the generic crime . . . [b]ut if the state offense covers more conduct, then it is overbroad and does not match the generic offense." *Id.*

Here, New Jersey's second-degree robbery statute provides that:

> A person is guilty of robbery if, *in the*

---

[2] The BIA had jurisdiction over Almanzar's appeal pursuant to 8 C.F.R. § 1003.1(b)(3).  We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). Because the BIA issued a written decision on the merits, we review that decision and not the IJ's. *See Moreno v. Att'y Gen.*, 887 F.3d 160, 163 (3d Cir. 2018).  We exercise de novo review over the Board's legal conclusions, including its "determination that a conviction . . . qualifies as a CIMT." *Id.*

[3] Almanzar also argues that the phrase "crime involving moral turpitude" used in 8 U.S.C. § 1227(a)(2)(a)(i) is unconstitutionally vague as applied to him.  Pet'r Br. at 24–30. Because we agree with Almanzar that conspiracy to commit second-degree robbery under New Jersey law is not a CIMT, we do not reach the merits of his vagueness challenge. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 181 (1979) ("[I]t is our practice to avoid the unnecessary decision of novel constitutional questions.").

4

*course of committing a theft*, he:

> (1) Inflicts bodily injury or uses force
> upon another; or
> (2) Threatens another with or
> purposely puts him in fear of
> immediate bodily injury; or
> (3) Commits or threatens
> immediately to commit any crime
> of the first or second degree.

N.J. Stat. Ann. § 2C:15-1(a) (emphasis added). Formulated this way, "[c]omitting or attempting to commit a theft is a necessary element of the crime of robbery" under New Jersey law. *State v. Whitaker*, 983 A.2d 181, 190 (N.J. 2009). Thus, to determine whether New Jersey second-degree robbery qualifies as a CIMT, we must examine the statute's four elements: theft and the three alternative aggravating circumstance elements.[4]

We start with the theft element. Under New Jersey law "[a] person is guilty of theft 'if he unlawfully takes, or exercises unlawful control over, movable property of another with purpose to deprive him thereof.'" *Id.* at 459–60 (quoting N.J. Stat. Ann. § 2C:20-3(a)). New Jersey's Code of Criminal Justice defines the term "deprive" to mean:

> (1) [T]o withhold or cause to be withheld
> property of another permanently or for so
> extended a period as to appropriate a
> substantial portion of its economic value, or

---

[4] In its supplemental brief, the Government urges our Court to remand so that it may submit additional evidence demonstrating the subsection under which Almanzar was convicted and have the BIA then then apply the modified categorical approach in the first instance. For the reasons explained below, however, the modified categorical approach is inapplicable here because none of the elements listed in § 2C:15-1 match the generic definition of a CIMT. *See Hillocks v. Att'y Gen.*, 934 F.3d 332, 339 (3d Cir. 2019) (explaining that modified categorical approach "only applies when (1) the statute . . . has alternative elements, and (2) at least one of the alternative divisible categories would . . . be a match.").

with purpose to restore only upon payment of reward or other compensation; or

(2) [T]o dispose or cause disposal of the property so as to make it unlikely that the owner will recover it.

N.J. Stat. Ann. § 2C:20-1(a). Based on these definitions, a conviction for theft under New Jersey law does not require that a defendant act with the purpose to permanently deprive others of their property, as is necessary for a theft offense to be morally turpitudinous under the BIA's precedent prior to *Matter of Diaz-Lizarraga*. *See Matter of Diaz-Lizarraga*, 26 I. & N. Dec. at 852–54. Indeed, New Jersey case law confirms theft can be committed if a person withholds property with the purpose to "appropriate a substantial portion of its economic value." *See State v. Kommendant*, No. A-2101-05T1, 2006 WL 3025601, at *3 (N.J. Super. Ct. App. Div. Oct. 26, 2006). So the theft element does not necessarily involve moral turpitude.

The same is true of the first aggravating circumstance element listed in § 2C:15-1(a)(1)—the "inflict[ion] [of] bodily injury or use[] [of] force upon another." Although the mens rea required for this element matches with that required of a CIMT, *compare State v. Sewell*, 603 A.2d 21, 23–24 (N.J. 1992), *with Matter of Acosta*, 27 I. & N. Dec. 420, 422 (BIA 2018), we cannot say the same for the actus reus. Under BIA precedent, for an offense involving force to qualify as morally turpitudinous some form of harm is necessary. *See In re Brissett*, No. AXXX-XX0-889, 2019 WL 5086723, at *1 (BIA Sept. 20, 2019); *In re Solon*, 24 I. & N. Dec. 239, 241 (BIA 2007). Under § 2C:15-1(a)(1), however, the amount of force needed to obtain a conviction "need not entail pain or bodily harm and need not leave any mark." N.J. Model Crim. Jury Charge: Robbery in the Second Degree (N.J.S.A. 2C:15-1) at 2. All that is required is "some degree of force to wrest the object from the victim," *State v. Sein*, 590 A.2d 665, 670 (N.J. 1991), which is more than a "mere 'bump,'" though a "push" may be sufficient. *State v. Pena*, No. A-2233-17T1, 2020 WL 468317, at *2 (N.J. Super. Ct. App. Div. Jan. 29, 2020).

Our analysis of the second aggravating circumstance element of N.J. Stat. Ann. § 2C:15-1(a)(2) is largely the same. Though the mens rea required for this element matches that

required of a CIMT, *see State v. Easley*, No. A-0104-07T4, 2009 WL 4250769, at *6 (N.J. Super. Ct. App. Div. Nov. 30, 2009), New Jersey's case law informs that the actus reus required by § 2C:15-1(a)(2) is not a categorical match. Whereas the BIA has held that, for an assault offense to constitute a CIMT, the harm threatened must rise to the level of severe bodily injury, *see, e.g.*, *Matter of J-G-P-*, 27 I. & N. Dec. 642, 645 (BIA 2019), the New Jersey Supreme Court has explained that "a thief commits second-degree robbery but not simple assault if he or she only threatens another with bodily injury *regardless of its seriousness*." *Sewell*, 603 A.2d at 27–28 (emphasis added).

We turn last to the third and final aggravating circumstance element of New Jersey's second degree robbery statute—"[c]omit[ting]or threaten[ing] immediately to commit any crime of the first or second degree." N.J. Stat. Ann. § 2C:15-1(a)(3). Under this section, so long as a person commits, or threatens to commit, *any* crime of the first or second degree in the course of committing a theft, he may be convicted for second-degree robbery. The use of "any" here undoubtedly sweeps in myriad first and second-degree offenses that, by themselves, would not qualify as CIMTs. Consider § 2C:15-1(a)(3)'s application to second degree offenses like official misconduct, N.J. Stat. Ann. § 2C:30-2, speculating or wagering on official action or information, § 2C:30-3, or manufacturing or facilitating the manufacture of a firearm using a three-dimensional printer, § 2C:39-9(*l*). Each of these offenses lacks "an actus reus of a reprehensible act . . . that is inherently base, vile, or depraved contrary to the accepted rules of morality and the duties owed to other persons, either individually or to society in general," as is required for CIMTs. *See Larios*, 978 F.3d at 69–70 (internal quotation marks and citation omitted).

Perhaps recognizing that the broad language of § 2C:15-1(a)(3) sweeps in many non-turpitudinous offenses, the Government argues that what makes this element morally turpitudinous is the fact that "[c]ommission of or threatening to commit another crime inherently intensifies the situation," Suppl. Br. at 7–8, so it is the synergy between the theft offense and the other crime that makes their combination morally turpitudinous. The Government's sole support for this "synergy theory" stems from the BIA's decision in *In re Lopez-Meza*, 22 I. & N. Dec. 1188, 1196 (BIA 1999), but the

7

BIA has since limited *In re Lopez-Meza* and clarified that "moral turpitude cannot be viewed as arising from some 'undefined synergism' by which two offenses, which do not involve moral turpitude, somehow combine to create one crime involving moral turpitude." *In re Torres-Varela*, 23 I. & N. Dec. 78, 90–91 (BIA 2001) (citation omitted).

In sum, none of the elements of New Jersey's second-degree robbery statute necessarily involve moral turpitude based on BIA precedent predating *Matter of Diaz-Lizarraga*. It was thus error for the BIA to hold that, under the categorical approach, Almanzar's second-degree robbery offense was a CIMT, so we will grant Almanzar's petition.

## III. Conclusion

For the foregoing reasons, we will grant Almanzar's petition, vacate the Board's order, and remand to the agency for further proceedings consistent with this opinion.