**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1622
_____

KHAWAR SALEEM,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A063-108-035)
Immigration Judge: Adam Panopoulos

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 10, 2025
Before: HARDIMAN, FREEMAN, and ROTH, <u>Circuit Judges</u>

(Opinion filed: February 26, 2026)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Khawar Saleem is a citizen of Pakistan. He is subject to a final order of removal after the Board of Immigration Appeals (BIA) agreed with an immigration judge (IJ) that Saleem is removable because of his New Jersey criminal conviction and, further, that he is not eligible for relief. Before us is Saleem's pro se petition for review (PFR), which challenges the decision of the BIA. The PFR will be dismissed in part, and denied in part.

## I.       Background

Saleem immigrated to the United States with his family in 2014, and adjusted to lawful permanent resident status. He was arrested a few years later, after an incident in New Jersey involving himself and a sleeping female passenger on a Greyhound bus.

At the end of a bench trial in state court, the judge found Saleem guilty of third-degree aggravated criminal sexual contact, see N.J.S.A. 2C:14–3a., and not guilty of first-degree aggravated sexual assault, see N.J.S.A. 2C:14–2a.(7), or second-degree sexual assault, N.J.S.A. 2C:14–2c.(1). Before sentencing, Saleem fled to Pakistan. He eventually surrendered and was paroled into the United States to continue the prosecution.

Based on Saleem's criminal history, DHS issued a notice to appear (NTA) charging him with removability under 8 U.S.C. § 1182(a)(2)(A)(i)(I). That provision makes removable non-citizens convicted of "a crime involving moral turpitude (other than a purely political offense) or an attempt of conspiracy to commit such a crime." Id.

2

After the removal charge was sustained, Saleem filed a counseled application for asylum and statutory withholding of removal. He also sought relief under the Convention Against Torture. Saleem claimed that, if removed to Pakistan, he would be harmed on account of membership in a particular social group (PSG) he defined as "liberal Pakistani m[e]n . . . who are targeted for their religious beliefs." AR 160.

Saleem testified at a merits hearing that after his trial he went to Pakistan to sell his share of his family's real property, in order to pay his mounting expenses. Saleem's father had given seventy percent of the property to a mosque associated with the militant group Tehrik-i-Taliban Pakistan (TTP), and the remainder was to be earmarked for Saleem. But TTP manipulated certain legal documents and claimed full ownership. The group resented Saleem because he had lived and been educated in the United States and was thus "going against [their] beliefs." AR 168. When Saleem turned to the Pakistani courts to pursue his property claim, TTP retaliated: first came threats, then a roadside beating with "sticks." AR 171. Saleem was treated at a hospital for unspecified injuries.

Saleem's property claim was denied by the local court. TTP informed Saleem that if he were to appeal, they would kill him. Saleem decided to appeal nevertheless, and to move from his hometown of Rawalpindi to Karachi, several hundred miles away. Saleem thought he would be safe in Karachi, but he was not; he was attacked by a group of four men on bikes, and suffered minor injuries and temporary loss of consciousness. Saleem perceived from his assailants' comments that they were affiliated with TTP and that the

3

attack was related to the property litigation. Saleem testified that when he went to the police station to report the attack, he was improperly detained for two days. It was then that Saleem decided to abandon the property litigation and leave Pakistan.

The IJ determined that although Saleem was a credible witness and had adequately corroborated his claims, he was removable as charged and ineligible for relief from removal.[1] The BIA agreed and issued a final order authorizing Saleem's removal to Pakistan. In its written decision, the BIA: refused to consider Saleem's new contention that he would be persecuted on account of membership in a PSG defined as "modern Muslims"; rejected Saleem's argument that his criminal conviction was not 'final' for immigration purposes; determined that a conviction under N.J.S.A. 2C:14–3a. qualifies as a CIMT; and determined that Saleem's fear-based claims were properly denied because, inter alia, the foundation for TTP's ire—the property litigation—was gone.

Proceeding pro se, Saleem timely filed a PFR.

## II.    Jurisdiction and Standard of Review

In general, we have jurisdiction to review final orders of removal in immigration proceedings. See 8 U.S.C. § 1252(a)(1), (a)(5). But insofar as Saleem was convicted of a CIMT, our jurisdiction is impaired: The criminal alien bar, see 8 U.S.C. § 1252(a)(2)(C),

---

[1] While the Government was permitted at the close of the merits hearing to amend the NTA to add a charge of removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) (providing that "any immigrant at the time of application for admission who is not in possession of" valid travel documents "is inadmissible"), the IJ never ruled on that additional charge.

limits the scope of our review to colorable constitutional claims and questions of law that have been presented, see 8 U.S.C. § 1252(a)(2)(D); Francisco-Lopez v. Att'y Gen., 970 F.3d 431, 435 n.1 (3d Cir. 2020); Jarbough v. Att'y Gen., 483 F.3d 184, 189 (3d Cir. 2007). Such claims and questions are reviewed de novo. See Myrie v. Att'y Gen., 855 F.3d 509, 515 (3d Cir. 2017).

### III.    Venue

Venue lies in "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). Section 1252(b)(2) is not jurisdictional. Castillo v. Att'y Gen., 109 F.4th 127, 133 n.5 (3d Cir. 2024).

Saleem's opening brief does not address venue. For its part, the Government suggests that venue is proper in this Circuit because Saleem's removal proceedings "were completed in Elizabeth, New Jersey." Gov't Br. 3. We disagree with that suggestion.

The NTA directed Saleem to appear in the Cleveland, Ohio immigration court, which serves as "the administrative control court for hearings docketed at the Moshannon Valley Correctional Center, where [Saleem was] detained." AR 548. And the record is devoid of evidence of a venue motion (or a ruling thereon). Cf. Castillo, 109 F.4th at 133 (cleaned up) (explaining that "the IJ could have changed venue only upon motion by one of the parties"). In other words, there was no "formal change of venue." Id. Just like in Castillo, then, "the Immigration Court where proceedings began and ended is in Cleveland, Ohio, and so judicial venue lies in the Sixth Circuit." Id. at 134.

5

That said, it would not be in "the interest of justice" to transfer the PFR. 28 U.S.C. § 1631. Saleem should not be faulted for filing his PFR here, given the BIA's statement that "the Third Circuit" is the court of appeals "in whose jurisdiction this case arises." AR 5. A petitioner's reasonable confusion about where to file may cut in favor of curing a venue defect with a transfer, but not under these circumstances. The agency at all levels applied our Circuit precedent; the PFR is fully briefed; and transfer would waste judicial resources and needlessly delay the adjudication we are prepared to make today. See Castillo, 109 F.4th at 135–36. For those reasons, we proceed to rule on Saleem's PFR.

## IV.     Discussion

A.     <u>Saleem fails to demonstrate that his offense of conviction is not a CIMT.</u>

CIMTs have two elements in common: (1) "reprehensible" offense conduct (the *actus reus* element); and (2) a culpable mental state of at least recklessness (the *mens rea* element). <u>Ndungu v. Att'y Gen.</u>, 126 F.4th 150, 160 (3d Cir. 2025), <u>judgment entered,</u> No. 20-2562, 2025 WL 1256385 (3d Cir. Apr. 28, 2025). Conduct is "reprehensible" if "inherently base, vile, or depraved contrary to the accepted rules of morality and the duties owed to other persons[.]" <u>Id.</u> (citation and internal quotations omitted).

To discern those elements in a criminal statute, we use the categorical approach. <u>See</u> <u>id.</u> at 160–61. We look only at the statute and the record of conviction, "not the alien's 'conduct.'" <u>Mehboob v. Att'y Gen.</u>, 549 F.3d 272, 275 (3d Cir. 2008) (citation omitted). And we "examine[] whether all possible convictions" under that statute, "even

6

those under the least culpable circumstances, would satisfy the relevant federal standard, which, here, is status as a CIMT." Ndungu, 126 F.4th at 161. Thus, "identifying the offense of conviction is essential to the categorical matching process." Id. at 168.

In Saleem's case, there is no dispute, and the record confirms, regardless, that he was convicted of third-degree aggravated criminal sexual contact under N.J.S.A. 2C:14–3a. See AR 473–75 (judgment of conviction); see also Ndungu, 126 F.4th at 168 ("[I]t is permissible for a tribunal to ascertain factually the offense of conviction."). A person violates that statute "if he commits an act of sexual contact with the victim under any of the circumstances set forth in 2C:14-2a.(2) through (7)." N.J.S.A. 2C:14–3a.[2]

Those alternatively phrased statutory "circumstances" are subsectioned offense elements. Cf. Grijalva Martinez v. Att'y Gen., 978 F.3d 860, 867–68 (3d Cir. 2020) (so holding with respect to the identically structured N.J.S.A. 2C:14–3b., which references the alternative "circumstances" in N.J.S.A. 2C:14-2c.(1)–(5)). And because the "circumstances" are "phrased in disjunctive form, . . . we must identify the specific subsection under which [Saleem] was convicted." Restrepo v. Att'y Gen., 617 F.3d 787,

---

[2] New Jersey defines "sexual contact" in this context as "an intentional touching by the victim or actor, either directly or through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J. Stat. Ann. § 2C:14-1d. In that definition, the term "'intimate parts' means the following body parts: sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." N.J. Stat. Ann. § 2C:14-1e.

800 (3d Cir. 2010). To do that, we use the modified categorical approach, inspecting "Shepard and other statutorily permitted documents." Ndungu, 126 F.4th at 173.

Shepard material confirms that the statutory reference for Saleem's conviction under N.J.S.A. 2C:14–3a. was N.J.S.A. 2C:14-2a.(7)(a). See AR 487–503 (Appellate Division opinion, describing the trial judge's findings of fact and conclusions of law); cf. Shepard v. United States, 544 U.S. 13, 20 (2005) (applying the categorical approach, and explaining that "[i]n cases tried without a jury, the closest analogs to jury instructions would be a bench-trial judge's formal rulings of law and findings of fact."). N.J.S.A. 2C:14-2a. criminalizes "sexual contact" in a variety of scenarios in which the victim's ability to consent is compromised. Subsection (7)(a), specifically, applies when "[t]he victim, at the time of sexual [contact], is one whom the actor knew or should have known was physically helpless or incapacitated."[3]

Having identified the elements of the statute of conviction, we would now turn to the critical interpretative question: Is the least culpable conduct necessary for a conviction under N.J.S.A. 2C:14–3a., via N.J.S.A. 2C:14-2a.(7)(a), non-turpitudinous? But we do not get to the heart of that question here, because Saleem's briefing on this issue is deficient in two critical ways.

---

[3] New Jersey defines "physically helpless" as "that condition in which a person is unconscious or is physically unable to flee or is physically unable to communicate unwillingness to act." N.J. Stat. Ann. § 2C:14-1g.

8

First, Saleem has failed to offer an argument on the reprehensibility/ *actus reus*

piece of the question. Even if we were to ignore that forfeiture, Saleem also did not make

such an argument before the BIA. "Under 8 U.S.C. § 1252(d)(1), a petitioner must

exhaust all remedies available to her in order to preserve her right to appellate review of a

final order of removal," and "[t]his requirement applies to each particular issue raised by

the petitioner." Gomez-Gabriel v. Att'y Gen., 146 F.4th 327, 330 (3d Cir. 2025) (per

curiam) (cleaned up). Where, as here, see Gov't Br. at 28 n.12, the Government properly

invokes the claims-processing exhaustion rule of § 1252(d)(1), we enforce the rule. See

Aguilar v. Att'y Gen., 107 F.4th 164, 168–69 (3d Cir. 2024).

Second, and with regard to the *mens rea* piece of the CIMT question, Saleem

focuses only on the purported facts of *his particular case* in arguing that his trial lacked

"any evidence of deliberate or malicious intent." Br. 40.[4] For example, Saleem asserts

that: "[t]he incident occurred under ambiguous circumstances"; he was sleeping when he

touched the victim; his "limited proficiency in English would have significantly impacted

his ability to understand the nuances of the situation and to express his intentions

clearly"; and his apologies to the victim and "voluntary change of seating," in the

---

[4] Saleem does not pursue the argument he made to the BIA, that the statute of conviction fails to satisfy the *mens rea* requirement for CIMT status because it uses the words "knew or should have known" in N.J.S.A. 2C:14-2a.(7), and thus criminalizes conduct that includes a negligent belief about the victim's physical helplessness. The argument is thus deemed forfeited. See Tineo v. Att'y Gen., 937 F.3d 200, 206 n.4 (3d Cir. 2019).

9

immediate aftermath, could "be interpreted as social courtesy" in an uncomfortable

situation "rather than admissions of guilt." Br. 40–47.

Saleem's nuanced assessment of his criminal case is irrelevant.[5] As we have

stated, repeatedly and recently, "[t]he categorical approach does not depend on the actual

factual basis for the predicate convictions." Ndungu, 126 F.4th at 162; see also Pereida v.

Wilkinson, 592 U.S. 224, 233–34 (2021) (noting the categorical approach's "preference

for hypothetical facts over real ones," and explaining that, "[f]ollowing its strictures, a

court does not consider the facts of an individual's crime as he actually committed it").

For those reasons, Saleem's lodged challenge to the BIA's determination that he

was convicted of a CIMT and that he is removable as charged fails.

B. Saleem's remaining issues are unexhausted, subject to the criminal alien bar, or without merit.

Many of the arguments in Saleem's opening brief were not presented to the

agency in the first instance. See Gomez-Gabriel, 146 F.4th at 330.[6] As for the issues that

---

[5] To the extent Saleem is attempting to collaterally attack in immigration proceedings the conviction underlying his removal order, that is improper. See Drakes v. INS, 330 F.3d 600, 603 (3d Cir. 2003); Urbina-Mauricio v. INS, 989 F.2d 1085, 1089 (9th Cir. 1993).

[6] The opening brief also reveals that Saleem has abandoned multiple issues that *were* raised in his BIA brief, like whether his conviction under N.J.S.A. 2C:14–3a. was 'final' for immigration purposes and could thus support the removal charge. Notably, that issue has not only been forfeited, see Tineo, 937 F.3d at 206 n.4, but it is meritless, too, because Saleem's direct appeal concluded before he was ordered removed to Pakistan by the IJ on November 3, 2023, see State v. Saleem, No. A-2138-21, 2023 WL 3561408, at *6 (N.J. Super. Ct. - App. Div. May 19, 2023) (per curiam), cert. denied, 302 A.3d 1162 (N.J. Oct. 6, 2023); see also Orabi v. Att'y Gen., 738 F.3d 535, 543 (3d Cir. 2014); cf. 8

10

have been exhausted with the agency and adequately briefed here, they either present questions of fact that we lack jurisdiction to review on account of the criminal alien bar—like whether the agency failed to recognize TTP's ongoing interest in harming Saleem, see, e.g., Br. 14, 35; cf. Jarbough, 483 F.3d at 189 (noting courts' recognition that arguments "such as that an Immigration Judge or the BIA incorrectly weighed evidence [or] failed to consider evidence . . . are not questions of law under § 1252(a)(2)(D)")—or they are without merit.

With respect to the latter category, we have determined, in particular, that the harm suffered by Saleem in Pakistan, see Br. 7, while condemnable, does not rise to the level of persecution as a matter of law. See, e.g., Jarbough, 483 F.3d at 191 (holding that two brief detentions by Syrian government, which included physical abuse that produced bruising, were "harassing and intimidating" and "deplorable," but did not amount to persecution); Kibinda v. Att'y Gen., 477 F.3d 113, 119–20 (3d Cir. 2007) (determining that five-day detention, during which time asylum applicant was hit in the head by an object and required seven stitches, was not persecution-level severe); Toure v. Att'y Gen., 443 F.3d 310, 318 (3d Cir. 2006) (assuming, arguendo, that two-day jailing accompanied by repeated beatings that left scar on asylum applicant's face was not persecution-level severe). Additionally, while § 1252(a)(2)(C) does not bar us from

U.S.C. § 1229a(c)(1)(A) (emphasis added) ("At *the conclusion* of the proceeding the immigration judge shall decide whether an alien is removable from the United States.").

reviewing the cognizability of a PSG, see Avila v. Att'y Gen., 82 F.4th 250, 256–57 (3d Cir. 2023), Saleem's only arguments that were presented to the agency at all levels, see Br. 31–34; see also Gov't Br. 35–37 (describing the PSG issues that are unexhausted or were forfeited), are completely unmoored from the administrative record and fail to demonstrate that "liberal Pakistani m[e]n . . . who are targeted for their religious beliefs" is a cognizable PSG, cf. S.E.R.L. v. Att'y Gen., 894 F.3d 535, 540 (3d Cir. 2018) (setting forth PSG-cognizability criteria).

## V.    Conclusion

For the reasons given above, the PFR will be dismissed in part, and denied in part.