**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3171
_____


GIFTON ANGUS, a/k/a Grant Oswald, a/k/a Marty Cherry,
a/k/a Glenton Henry, a/k/a Raymond Angus,
                                                              Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                                              Respondent


_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A026-110-644)
Immigration Judge: Honorable Roxanne Hladylowycz
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 3, 2017

Before: AMBRO, KRAUSE and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: January 13, 2017)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Gifton Angus petitions pro se for review of the Board of Immigration Appeals'
("BIA") July 2016 order. That order upheld the Immigration Judge's ("IJ") March 2016
decision, which denied Angus relief under the Convention Against Torture ("CAT") and
reinstated Angus's deportation order issued in 1995.[1] For the reasons that follow, we will
dismiss the petition in part and deny it in part.

I.

Angus is a Jamaican citizen who entered the United States in 1981 and obtained
lawful permanent resident status in 1983. In 1987, he went back to Jamaica for a short
visit. When his return flight landed in the United States, he was arrested because a large
amount of cocaine was found in his suitcase. In 1989, the United States District Court for
the Eastern District of New York convicted him of importing, and possessing with intent
to distribute, cocaine.

In light of that conviction, the former Immigration and Naturalization Service
charged Angus with being deportable for having been convicted of an aggravated felony
and a controlled substance offense. Angus denied the charge that he was an aggravated
felon and applied for a discretionary waiver of deportation under former 8 U.S.C.
§ 1182(c).[2] In 1994, an IJ sustained both charges of deportability and concluded that

---

[1] In 1996, Congress passed legislation that replaced the term "deportation" with the term
"removal." See United States v. Marin-Castaneda, 134 F.3d 551, 554 n.1 (3d Cir. 1998).
[2] Section 1182(c) was repealed in 1996. See Cespedes-Aquino v. Att'y Gen., 498 F.3d
221, 222 (3d Cir. 2007).

Angus was ineligible for § 1182(c) relief. As a result, the IJ ordered that Angus be deported to Jamaica. The BIA upheld the IJ's decision in 1995, and Angus was removed to Jamaica in 1999.[3]

Angus reentered the United States in 2000. In 2013, he came to the attention of the Department of Homeland Security ("DHS") after he was arrested in New York for possessing a false driver's license. DHS then notified him of its intent to reinstate his deportation order pursuant to 8 U.S.C. § 1231(a)(5). Angus requested a reasonable fear interview and was interviewed by an asylum officer. The asylum officer determined that Angus's fear of returning to Jamaica was reasonable and referred the case to an IJ for withholding-only proceedings pursuant to 8 C.F.R. § 1208.31(e).

The IJ held a merits hearing in March 2016, during which Angus proceeded pro se. Angus testified as follows. When he visited Jamaica in 1987, he spent time with a purported drug lord named Trevor Dobson, whom Angus knew from his old neighborhood. Dobson introduced Angus to some high-ranking officials in the Jamaican government, and the group discussed a plan in which Angus would smuggle cocaine into the United States. Angus refused to go along with this plan, but the cocaine was ultimately put in his suitcase without his knowledge. As indicated above, authorities in the United States discovered the cocaine when Angus returned from Jamaica. Angus did

---

[3] The year before Angus's removal, he pleaded guilty in Tennessee state court to possessing marijuana with intent to sell and deliver.

3

not tell the authorities about Dobson because he was afraid of Dobson. According to Angus, Dobson believed that Angus had stolen the cocaine.

When Angus was removed to Jamaica in 1999, he went into hiding at the home of his cousin's friend. In 2004, when Angus was back in the United States, he saw his brother murdered. Angus believed that he himself had been the target because, immediately before the shooting, one of the assailants said, "[H]ey, Gifton," and asked "[W]here's the money for the drug [sic]?" (A.R. at 193.) In 2008, Dobson's brother-in-law ran into Angus in New York and told him, "you can't hide, we going to get you." (Id. at 186.) In 2015, members of Angus's family visited Jamaica and told him that "his 'name [was] in the community [there]," and that the drug dealers would say [']oh, I got your brother but you next.[']". The record suggests the statement "that the drug dealer in the community need to get their money or their drugs" was background for the IJ, not a continuation of what his family reported to him. (Id. at 192.)

At the conclusion of Angus's testimony, she issued her decision. The IJ explained that because Angus was an aggravated felon, he was eligible only for deferral of removal under the CAT. The IJ began her CAT analysis by finding that Angus's testimony was neither credible nor plausible. The IJ cited the following points in support of that determination: (1) although Angus claimed that he was with his brother during the 2004 shooting, there was no evidence in the record that Angus was actually present during that incident (the lone witness named in the police report was *not* Angus); (2) despite Angus's "long and lengthy history with the authorities, be they Immigration authorities, Federal

authorities[,] or state and local criminal authorities," he did not tell the authorities about his fear of Dobson — a fear that dated back to 1987 — until 2014, (id. at 139); and (3) Angus had not established that someone named Trevor Dobson even exists. The IJ then determined that Angus had failed to rehabilitate the essential elements of his claim through documentary evidence. As a result, the IJ denied CAT relief and reinstated Angus's deportation order.

Angus subsequently filed a pro se appeal with the BIA, challenging the IJ's 2016 decision. During the pendency of that appeal, Angus filed a "special motion to reopen" with the BIA, seeking "retroactive permission" to reapply for relief under former § 1182(c). In July 2016, the BIA issued a decision that (1) upheld the IJ's denial of CAT relief and dismissed the appeal, and (2) treated the motion to reopen as a motion to remand and denied remand. This timely petition for review followed.

## II.

We have jurisdiction over Angus's petition pursuant to 8 U.S.C. § 1252(a)(1).[4] However, the scope of our review is limited in three respects. First, to the extent that

---

[4] Angus's reinstatement proceedings were docketed in York, Pennsylvania, and he appeared in a courtroom in York during the March 2016 hearing. However, the presiding IJ — the Honorable Roxanne Hladylowycz — conducted the hearing via video conference from Arlington, Virginia (which is located in the Fourth Circuit). Accordingly, there is some question whether venue is proper in our Court, as a petition for review "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2). But we need not resolve this question, for § 1252(b)(2) is "non-jurisdictional," Khouzam v. Att'y Gen., 549 F.3d 235, 249 (3d Cir. 2008), and the parties agree that this case should proceed in our Court, see Moreno-Bravo v. Gonzales, 463 F.3d 253, 258 (2d Cir. 2006) (explaining

Angus seeks to challenge his original deportation order and/or the proceedings underlying that order, such a challenge is outside the scope of our review and cannot be considered here. See Ponta-Garcia v. Att'y Gen., 557 F.3d 158, 163 (3d Cir. 2009) (citing 8 U.S.C. § 1231(a)(5)). Second, because Angus's brief has not challenged the BIA's disposition of his motion to reopen, he has waived that issue. See Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004). Third, because Angus was convicted of an aggravated felony, our review of the agency's denial of his CAT claim is limited to colorable constitutional and legal claims. See 8 U.S.C. § 1252(a)(2)(C)-(D); Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010). "To determine whether a claim is colorable, we ask whether 'it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous.'" Id. at 186 (quoting Arbaugh v. Y & H Corp., 546 U.S. 500, 513 n.10 (2006)). We review constitutional and legal claims under a de novo standard. See Yusupov v. Att'y Gen., 518 F.3d 185, 197 (3d Cir. 2008).

Although Angus's brief is not a model of clarity, we believe that he has raised a colorable constitutional claim. Specifically, we liberally construe his brief as arguing that his due process rights have been violated because certain lines in the March 2016 hearing transcript used the word "indiscernible" in place of his testimony. See Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se*

_____

that the issue of venue "is in the nature of a convenience to litigants and subject to their disposition").

6

litigant's pleadings is well-established.").[5]  However, this claim ultimately fails on the

merits because he has not shown that the transcript's omission of that testimony

prejudiced him.  See, e.g., Sihombing v. Holder, 581 F.3d 41, 46 (1st Cir. 2009); Garza-

Moreno v. Gonzales, 489 F.3d 239, 242 (6th Cir. 2007).[6]

Angus raises other constitutional and legal claims in his brief, but they are not

colorable.  He claims, in complete contradiction to the record, that the IJ did not allow

him to testify in support of his request for CAT relief.  Nor does the record provide any

support for his contention that the IJ turned a blind eye to his CAT claim.  Angus's

allegations that the IJ (a) did not "employ the good clause [sic] standard," and (b) denied

CAT relief "without making the finding that the court [is] required to make," (Pet'r's Br.

2-3), are vague and conclusory.  And his claims that attempt to attack his original

deportation proceedings are, as noted above, outside the scope of our review.  All of his

---

[5] This claim was presented to, and rejected by, the BIA.

[6] According to Angus, during that omitted testimony, he stated, inter alia, that he could prove that he indeed witnessed his brother's murder.  Angus appears to claim that the IJ should have (1) liberally construed this statement as a request for a continuance, and (2) granted that continuance.  This claim, which Angus presented to the BIA, does not entitle him to relief here.  Although many months have passed since the hearing, he has failed to produce any evidence establishing that he witnessed the murder.  Therefore, even if we were to assume for the sake of argument that the IJ erred by not granting a continuance, we would conclude that this error was harmless.  See Yuan v. Att'y Gen., 642 F.3d 420, 427 (3d Cir. 2011) (explaining that an error in an immigration case is harmless "when it is highly probable that the error did not affect the outcome of the case").  To the extent that Angus asks that we provide him with a copy of the audio recording of his hearing testimony, that request is denied.

non-colorable claims must be dismissed for lack of jurisdiction.  See Pareja, 615 F.3d at 189.

In light of the above, we will dismiss Angus's petition in part and deny it in part.