PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-2123, 23-2800 & 23-3136
_____

ELFIDO GONZALEZ CASTILLO,
                                                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A090-276-154)
Immigration Judge:  Jennifer Piateski


_____


Argued March 5, 2024

Before:   JORDAN, PORTER, and PHIPPS, *Circuit Judges*

(Filed: July 24, 2024)
_____

Ben Winograd   [ARGUED]
Immigrant & Refugee Appellate Center
3602 Forest Drive
Alexandria, VA   22302
        *Counsel for Petitioner*

Merrick B. Garland
Kitty M. Lees   [ARGUED]
Lindsay Marshall
OIL
United States Department of Justice
Office of Immigration Litigation
P.O. Box 848
Ben Franklin Station
Washington, DC   20044
        *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Elfido Gonzalez Castillo, a Mexican citizen, received a Notice to Appear ("NTA") in the Immigration Court in Cleveland, Ohio, and the NTA was filed and docketed in that Court.  Hearings were held.  Castillo attended virtually from the Moshannon Valley Correctional Center in Philipsburg, Pennsylvania, where he was detained, and the Immigration Judge ("IJ") conducted the final hearing virtually while physically present in Virginia.   A couple of weeks after that final hearing, the IJ ordered that Castillo be removed from the country.  The question before us now is this:  Which United

States Court of Appeals – the Third Circuit, the Fourth Circuit, or the Sixth Circuit – is the proper one in which Castillo should file his petition for review? An argument can be made for each. What has historically been a simple venue decision is complicated now by the reality that parties and judges and court offices can be widely separated geographically and still come together virtually for legal proceedings.

The law requires that a petition for review of a final order of removal "be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2); *cf. Khouzam v. Att'y Gen.*, 549 F.3d 235, 249 (3d Cir. 2008) (holding § 1252(b)(2) non-jurisdictional). Castillo filed three petitions for review here in the Third Circuit, asserting that venue is proper before us "because the Immigration Judge completed the proceedings in Philipsburg, Pennsylvania, which is within the jurisdiction of this judicial circuit." (23-2123, Pet. at 1.) We conclude, however, that the Immigration Judge completed the proceedings in Cleveland, Ohio, so venue does not lie here; it lies in the United States Court of Appeals for the Sixth Circuit. We will, therefore, transfer Castillo's petitions to that court.

## I.    BACKGROUND

Castillo was admitted to the United States as a lawful permanent resident in 1989. In March 2009, he filed an application for naturalization with U.S. Citizenship and Immigration Services. Soon thereafter, in July 2009, Castillo was indicted for sexually abusing his niece. When he appeared for his naturalization interviews in September and October of 2009, he did not disclose that those criminal charges were pending. He was sworn in as a United States citizen on

3

October 27, 2009. Two months later, he pled guilty to third-degree sexual assault.

In December 2019, the government filed a civil complaint in district court under 8 U.S.C. § 1451(a) to revoke Castillo's naturalization. The government argued that Castillo had provided false testimony to procure naturalization, which demonstrated that he lacked the good moral character required to attain citizenship. In May 2022, the district court revoked his citizenship.

Then, in August 2022, the Department of Homeland Security issued the earlier mentioned NTA, charging Castillo with removability pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) for having been convicted of child abuse. The NTA was filed in the Immigration Court located in Cleveland, Ohio, and it called for Castillo to appear there. He applied for cancellation of removal under 8 U.S.C. § 1229b(a). A remote hearing was held, at which the IJ attended virtually from Richmond, Virginia, and Castillo attended virtually from the detention center in Phillipsburg, Pennsylvania. After the hearing, the IJ exercised her discretion and denied Castillo's application for cancellation.

On appeal to the BIA, Castillo argued that he was not removable because he was a U.S. citizen when he was convicted of the removable offense. Before considering Castillo's argument, the BIA conducted a choice-of-law analysis under its recent decision in *Matter of Garcia*, 28 I. & N. Dec. 693 (B.I.A. 2023). In *Garcia*, the BIA held that the choice of which Circuit Court's law is controlling is based on

4

the "location of the Immigration Court where venue lies[.]"[1] *Id.* at 703. Because Castillo's NTA was filed in Cleveland, Ohio, the BIA applied Sixth Circuit law. That ruling was outcome determinative before the BIA. Castillo's argument (which is, in essence, "I can't be removable for convictions that occurred after I became a citizen") is foreclosed by BIA precedent.[2] While some circuit courts – including ours – have rejected that precedent,[3] the Sixth Circuit has not yet addressed

---

[1] [T]he controlling circuit law in Immigration Court proceedings for choice of law purposes is the law governing the geographic location of the Immigration Court where venue lies, namely where jurisdiction vests and proceedings commence upon the filing of a charging document, and will only change if an Immigration Judge subsequently grants a change of venue to another Immigration Court. *Matter of Garcia*, 28 I. & N. Dec. 693, 703. (B.I.A. 2023).

[2] In *Matter of Gonzalez-Muro*, 24 I. & N. Dec. 472 (B.I.A. 2008), the BIA held that a noncitizen who, like Castillo, pled guilty to or was convicted of crimes between his unlawful acquisition of citizenship and its revocation, was removable. *Id.* at 474.

[3] Three circuit courts, including ours, have rejected *Gonzalez-Muro*. *See Singh v. Att'y Gen.*, 12 F.4th 262, 277-78 (3d Cir. 2021) (holding that noncitizens who were naturalized citizens at the time of their conviction are immune from removal under § 1227(a)(2)(A)(iii)); *Hylton v. Att'y Gen.*, 992 F.3d 1154, 1160 (11th Cir. 2021) (same); *Okpala v. Whitaker*, 908 F.3d 965, 970 (5th Cir. 2018) (same).

5

it. So the BIA was able to apply its precedent and dismiss the appeal.

Castillo timely filed a petition for review in our Court (C.A. No. 23-2123), asserting that venue is proper here "because the Immigration Judge completed the proceedings in Philipsburg, Pennsylvania." (23-2123, Pet. at 1.) Simultaneously, Castillo filed a motion for reconsideration with the BIA. The BIA denied that motion, and Castillo, seeking to overturn the ruling, filed another petition for review (C.A. No. 23-2800), which has been consolidated with the original petition for briefing and scheduling purposes. Then, he filed a second motion to reopen with the BIA.[4] It denied his motion, and Castillo filed a third petition for review (C.A. No. 23-3136) relating to that order, and it too has been consolidated with the others.

Upon screening each petition, the Clerk determined that venue might be appropriate in the Sixth Circuit and asked the parties to show cause why the petition should not be transferred there. In response, the government moved to transfer the petition to the Sixth Circuit. Castillo opposes transfer and asserts that venue is proper here. We address this threshold venue issue now so that the case can proceed on the merits in the appropriate court. And the venue question implicates yet

---

[4] Castillo argued that the attorney who represented him before the IJ provided ineffective assistance by failing to challenge his removability on the ground that he was a naturalized citizen at the time that he was convicted of the removable offense.

6

another question, namely, whether we have the inherent power to transfer the case, if need be.

## II.  DISCUSSION[5]

### A.  Venue lies in the Sixth Circuit.

Under 8 U.S.C. § 1252(b)(2), venue lies in "the court of appeals for the judicial circuit *in which the immigration judge completed the proceedings*." (emphasis added). Which judicial circuit that might be in this case is not immediately clear, as the NTA was docketed in, and ordered the respondent to appear in, the Immigration Court in Ohio (covered by the Sixth Circuit), but the hearings were conducted remotely by an IJ physically located in Virginia (covered by the Fourth Circuit), and with the petitioner appearing from his detention center in Pennsylvania (covered by the Third Circuit). In that scenario, any one of those three circuit courts of appeals could conceivably be the appropriate venue.

The circuit courts that have addressed § 1252(b)(2) in similar contexts have arrived at conflicting conclusions, with the First, Second, Seventh, and Ninth Circuits on one side of

---

[5] Pursuant to 8 U.S.C. § 1252(a)(5), we have jurisdiction to review final orders of removal, regardless of whether venue lies here. *See Khouzam v. Att'y Gen.*, 549 F.3d 235, 249 (3d Cir. 2008) (holding that 8 U.S.C. § 1252(b)(2) is a non-jurisdictional venue provision).

7

the split, and the Fourth and Tenth on the other.[6] Now it is our turn to weigh in.[7]

---

[6] *Compare Bazile v. Garland*, 76 F.4th 5, 13 (1st Cir. 2023) (holding that "an IJ necessarily completes the proceedings for the purposes of section 1252(b)(2) at the court where the proceedings are commenced, absent a formal change in administrative venue"), *Sarr v. Garland*, 50 F.4th 326, 332 (2d Cir. 2022) (holding that judicial venue lies in the court "where – absent evidence of a change of venue – proceedings commenced," meaning the immigration court "identifie[d]" on the charging document), *Ramos v. Ashcroft*, 371 F.3d 948, 949 (7th Cir. 2004) (concluding that the IJ "completed the proceedings" where "the court is located," meaning "where all parties were required to file their motions and briefs" and "where the orders were prepared and entered"), *and Plancarte Sauceda v. Garland*, 23 F.4th 824, 831-32 (9th Cir. 2022) (concluding that IJ "completed the proceedings" at the hearing location designated on the charging document or initial hearing notice unless the IJ had granted change of venue), *with Herrera-Alcala v. Garland*, 39 F.4th 233, 240-41 (4th Cir. 2022) (holding that the IJ "complete[s] the proceedings" from the physical location of the IJ during the hearing), *and Yang You Lee v. Lynch*, 791 F.3d 1261, 1264-66 (10th Cir. 2015) (tying "judicial venue to the IJ's location when he or she completes removal proceedings").

While the Tenth Circuit's holding focuses on "the IJ's location," much of its analysis may be consistent with our holding today. There, the charging document ordered the petitioner who was in Oklahoma (the Tenth Circuit) "to appear before an IJ at the Dallas Immigration Court [(the Fifth Circuit),]" and so "it appear[ed] that IJ venue began and remained in Dallas." *Yang You Lee*, 791 F.3d at 1264-65

(citing 8 C.F.R. §§ 1003.14, 1003.20). Several hearings were conducted virtually with an IJ located in an Immigration Court in Dallas and the petitioner physically in Oklahoma. *Id.* at 1262. For the final hearing, the parties appeared in person in Dallas and no virtual conferencing technology was used. *Id.* at 1263. Yet, for reasons that are not clear, the final hearing notice listed an address in Oklahoma City as the hearing location. *Id.* Based on "the specific factual scenario" confronted in that case, the Tenth Circuit declined to base judicial venue on the Oklahoma City hearing location specified on the final hearing notice, and concluded that judicial venue was in the Fifth Circuit, "because the IJ held the final hearing in Dallas, Texas; [the petitioner] and the government's representative physically appeared in Dallas for the final hearing; and the IJ issued his final order from the Dallas Immigration Court." *Id.* at 1264, 1266. Thus, as the Tenth Circuit's conclusion appears to be based on more than just the location of the immigration court, we place it on the "other side" of the split.

[7] While we have not considered this question at length, we briefly addressed in *Luziga v. Attorney General* whether venue was appropriate in this Circuit when an IJ conducted a remote hearing while physically outside it. 937 F.3d 244 (3d Cir. 2019). In that case, the IJ had "entered her appearance over proceedings in York, Pennsylvania[,] from Arlington, Virginia." *Id.* at 250. To determine that venue was proper, we referred to a statement in an earlier nonprecedential opinion that "venue is proper where an IJ sitting outside our Circuit appears by video conference within our Circuit." *Id.* (citing *Angus v. Att'y Gen.*, 675 F. App'x 193, 196 n.4 (3d Cir. 2017)

9

The operative question is where does the IJ "complete the proceedings." Our decision today does not turn on the term "proceeding" but on the word "completed." "Proceedings" in this context is typically used to describe court-like hearings. For example, § 1229(a)(1)(G)(i) of title 8 of the U.S. Code requires an NTA to include "[t]he time and place at which the proceedings will be held[,]" which implies a court-like hearing.

---

(per curiam)).

Castillo argues that the situation is the same in this case, "as the IJ was physically sitting in Richmond, Virginia, but appeared by video at the hearing location[,]" which, he says, was in Pennsylvania. (23-2123, 3d Cir. D.I. 13 at 12-13 (citing A.R. at 78).) But Castillo reads *Luziga* too broadly. First, the parties in *Luziga* did not contest venue, so our discussion there appears to be no more weighty than dicta. *Luziga*, 937 F.3d at 250; *cf. Nederland Shipping Corp. v. United States*, 18 F.4th 115, 130 (3d Cir. 2021) (explaining that "drive-by jurisdictional rulings carry little precedential weight") (alteration and internal quotation marks omitted). Further, while the petitioner in *Luziga* attended the hearings from York, Pennsylvania, the charging document also directed the petitioner to appear for a hearing at the Immigration Court in York, and that notice and other notices and orders were docketed in York. In our case, however, Castillo appeared virtually from the detention center in Phillipsburg, Pennsylvania but the charging documents were filed in, and directed him to appear at, the Immigration Court in Cleveland, Ohio**.** Because *Luziga* did not address which facts determined the location of the relevant proceedings, nor do its facts mirror the ones here, its venue decision does not control.

Section § 1229a(b)(1) specifies an IJ's duties and powers in conducting removal proceedings, including administering oaths, receiving evidence, interrogating witnesses, and holding parties in contempt, all of which are typically relevant to conducting court-like hearings. Further, § 1229a(b)(2) specifies the "form of proceeding" "may take place" in person, or through video or telephone conference, which implies court-like hearings. Then, § 1101(b)(4) of the same title defines an "immigration judge" as someone being "qualified to conduct specified classes of proceedings, including a hearing under section 1229a of this title[,]" which indicates that hearings are one type of proceeding.

But sometimes the word "proceedings" refers not just to the hearings but to another part of the process, or to the entire adjudication. For example, the statute says an NTA, which by its very nature calls for a hearing, shall be given "in removal proceedings[.]" 8 U.S.C. § 1229(a)(1). That indicates the word "proceedings" is broader than just a reference to the hearing. Also, some parts of the statute explicitly refer to both "proceedings" and "hearings" to describe different aspects of the process, which indicates that "proceedings" is not merely a synonym for "hearings." Section 1229(b)(1) requires that "an alien be permitted the opportunity to secure counsel before the first hearing date in proceedings under section 1229a of this title[,]" and § 1229a(c)(1)(A) states that "[a]t the conclusion of the proceeding the immigration judge shall decide whether an alien is removable from the United States[]" and such decision "shall be based only on the evidence produced at the hearing." That differentiation between "proceedings" and "hearings" is especially relevant here because the IJ's decision was rendered after, rather than "at," the conclusion of the hearing.

11

For our purposes today, it ultimately does not matter whether the relevant "proceeding" is the final merits hearing or the broader adjudication process because, under either reading, the IJ "completed" the "proceedings" in the Cleveland, Ohio Immigration Court.[8] The NTA, the filing of which vests jurisdiction and commences the "proceedings," 8 C.F.R. § 1003.14(a), was filed in the Cleveland Immigration Court and directed Castillo to appear there. Upon that filing, administrative venue vested in that Immigration Court, 8 C.F.R. § 1003.20(a), and the IJ could have "change[d] venue only upon motion by one of the parties[.]" 8 C.F.R. § 1003.20(b).[9] Logically, then, without a formal change of venue, the IJ conducted, and "completed," those proceedings where they began – in Ohio.[10] *See Ramos v. Ashcroft*, 371 F.3d

---

[8] In his partial concurrence, our colleague bases his conclusion that "proceedings" means "hearings" on select provisions in the immigration statutes in which the word conveys that meaning in those specific contexts, but our colleague does not account for the instances in which "proceedings" is used more broadly. Further, he does not address the import of the word "completed" in 8 U.S.C. § 1252(b)(2), which, given the facts of this case, is the basis for our holding. We decline to speculate on whether our differing approaches may yield different results on different facts.

[9] Here, no party moved to change venue at any point before the Immigration Court.

[10] We are aware of the BIA's recent precedential decision in *Matter of M-N-I-*, 28 I. & N. Dec. 803 (BIA 2024), which the parties have brought to our attention. That decision addressed whether an administrative change from an

12

948, 949 (7th Cir. 2004) (explaining that the IJ "completed *his* role" at the immigration court's location, which "would have been true even had … the IJ participat[ed] from, say, a vacation home [outside of the Circuit]").

Therefore, in the context of remote proceedings or hearings, the physical locations of the IJ and other participants are not what dictates the answer to the question of where the proceedings occur. Instead, we agree with the First, Second, Seventh, and Ninth Circuits that "proceedings" take place in the Immigration Court in which the proceedings began, unless there is a formal change of venue. *See Bazile v. Garland*, 76 F.4th 5, 13 (1st Cir. 2023); *Sarr v. Garland*, 50 F.4th 326, 332 (2d Cir. 2022); *Ramos*, 371 F.3d at 949; *Plancarte Sauceda v. Garland*, 23 F.4th 824, 832 (9th Cir. 2022). Judicial venue under § 1252(b)(2) thus aligns with administrative venue. *See Bazile*, 76 F.4th at 13 ("[W]here the IJ completes the proceedings – that is, judicial venue – must align with administrative venue.").[11]

---

immigration court in Ohio to one in New Jersey also affected a change in venue. *Id.* at 806-07. The BIA answered that in the negative. That is not, however, the issue before us now.

[11] Our holding is also consistent with the BIA's *Garcia* analysis, which aligns judicial venue under 8 U.S.C. § 1252(b)(2) to "the geographic location of the Immigration Court where [administrative] venue lies, namely where jurisdiction vests and proceedings commence upon the filing of a charging document." 28 I. & N. Dec. at 703. As an agency opinion on court procedure, *Garcia* receives no strong or binding deference. *See Garcia*, 28 I. & N. Dec. at 702 n.10 (acknowledging that § 1252(b)(2) "is a judicial review

13

An alternative interpretation tying judicial venue to the physical location of the IJ or any party would be untenable and yield anomalous results.  If the IJ were outside the country for the final merits hearing, or when issuing a final order, where would judicial venue lie?  And even if the IJ conducted all proceedings domestically, that "would create uncertainty for the parties, who … may only learn the location of the IJ presiding over a particular hearing shortly before the hearing takes place, and long after the briefing is finished."  *Bazile*, 76 F.4th at 12.  Surely an interpretation that would allow the IJ's physical movement to change where venue lies and hence, potentially, the legal precedents governing an action, all without the parties' knowledge or consent, ought to be avoided.[12]  And a party's movements could likewise lead to

provision that is subject to interpretation by the circuit courts" and that the BIA has "no role, nor [is it] afforded any deference, in interpreting that statute" nor any "role in determining in which circuit court a petition for review is properly filed"); *see also Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 110 (3d Cir. 2003) (offering no *Chevron* deference where agency statutory interpretation "extend[ed] beyond the administrative stage into … judicial proceedings").

[12] In *Herrera-Alcala*, the Fourth Circuit held that "[v]enue under § 1252(b)(2) depends on the location of the Immigration Judge[,]" based on where the IJ "sat … during the proceedings."  39 F.4th at 241, 243.  While the court suggested that it did "not address whether an Immigration Judge acts from his assigned work location while physically located elsewhere," *id.* at 241 n.4, nothing in its analysis limits its conclusion that venue "depends on the location of the

14

uncertainty. Instead, the more logical interpretation is that the place where proceedings commence with the filing of the charging document in a particular Immigration Court is also the place where, for venue purpose under § 1252(b)(2), the IJ also "complete[s] the proceedings," assuming there is no formal change of venue. Here, the Immigration Court where proceedings began and ended is in Cleveland, Ohio, and so judicial venue lies in the Sixth Circuit.

**B.  We have the inherent power to transfer Castillo's petitions to the Sixth Circuit, and it is in the interests of justice to do so.**

Having determined that venue lies in the Sixth Circuit, we now address whether we have the power to transfer

---

Immigration Judge" to the place where the IJ is assigned. *Id.* at 243.

The Fourth Circuit's conclusion appears to rely on the Seventh Circuit's opinion in *Ramos*, which held that the IJ would have completed his role in Chicago (the Seventh Circuit), even if he had participated in the proceedings remotely while on vacation in Michigan (the Sixth Circuit). *Id.* at 241 (citing 371 F.3d at 949). In *Ramos*, however, Chicago was not just the IJ's location; it was the location of the immigration court, "where all parties were required to file their motions and briefs" and "where the orders were prepared and entered[.]" *Ramos*, 371 F.3d at 949. It was on that basis that the *Ramos* court held that under § 1252(b)(2), "the alien may petition for review" – and thus venue lies – "in the circuit where the immigration court is located." *Id.*

15

Castillo's petitions to that circuit. Under 28 U.S.C. § 1631, if "an appeal, including a petition for review of administrative action, is … filed" and the "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court … in which the action or appeal could have been brought at the time it was filed or noticed[.]" That is clear enough. But, while Congress has expressly authorized us to transfer cases when we lack jurisdiction, it has been silent as to our power to transfer when we have jurisdiction but venue is improper. *See Khouzam*, 549 F.3d at 249 (8 U.S.C. § 1252(b)(2) is a non-jurisdictional venue provision).

While § 1631 does not explicitly grant us the power to transfer a case like this, neither does it forbid it, and we believe we have the inherent power to do so. "[S]itting in equity, [we] possess[] all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion." *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 563 (3d Cir. 1985) (en banc) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)). Accordingly, "in the absence of contrary legislation, courts under their inherent powers have developed a wide range of tools … to achieve justice in their results." *Id.* at 564. Thus, even though § 1631 does not comment on transfer in a circumstance like this, its silence does not "eliminate[] any inherent power in the courts to transfer a case to cure improper venue." *Alexander v. Comm'r*, 825 F.2d 499, 501 (D.C. Cir. 1987) (per curiam). We hold, then, that we have the inherent power to take a petition over which we have jurisdiction but not venue and transfer it to another circuit

16

where venue is proper.[13] In so holding, we join a chorus of other courts that have addressed the issue, and all are in harmony.[14]

---

[13] Our colleague's partial dissent relies on our much earlier holding in *Schoen v. Mountain Producers Corp.*, 170 F.2d 707, 713 (3d Cir. 1948), and, while there are reasons to believe that *Schoen* does not provide meaningful guidance to this situation, even if it did, our later *en banc* decision in *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 563 (3d Cir. 1985), would control. In *Eash*, we recognized a category of inherent powers that are "necessary only in the practical sense of being useful," and we explained that courts "may exercise this kind of inherent power only in the absence of contrary legislative direction." *Id.* at 563. Applied here, the transfer of this case to another forum is practically useful, and there is no contrary legislative direction.

[14] *See Sorcia v. Holder*, 643 F.3d 117, 122 (4th Cir. 2011) ("Although the authority to transfer a case under § 1631 exists only when the transferring court lacks jurisdiction, courts have inherent power to transfer cases over which they have jurisdiction but not venue."); *Dornbusch v. Comm'r*, 860 F.2d 611, 615 (5th Cir. 1988) (per curiam) (holding that the court has the power to transfer a case to a circuit court "of proper jurisdiction and venue" "either under section 1631, or, if it be technically inapplicable because this Court is an improper forum due only to a want of venue rather than a want of jurisdiction, then … under … inherent or implied power"); *Thiam v. Holder*, 677 F.3d 299, 302 (6th Cir. 2012) (holding that even though it was not jurisdictionally mandated to transfer the case under § 1631, "it is still our option to transfer a petition to another circuit with jurisdiction"); *Cordova-Soto*

17

Our holding also conforms to Congress's apparent intent in codifying § 1631, which was to "rescue cases mistakenly filed in the wrong court," and to allow transfer to reach a just result. *Dornbusch v. Comm'r*, 860 F.2d 611, 613 (5th Cir. 1988) (internal quotation marks omitted); *see also Paul v. INS*, 348 F.3d 43, 47 (2d Cir. 2003) ("Congress intended [§ 1631] to aid litigants who were confused as to the proper forum for review.").

In considering whether transfer serves the interests of justice, courts generally consider several factors, including the reasonableness of a petitioner's confusion about the proper venue, whether transfer will delay resolution, inconvenience to

*v. Holder*, 732 F.3d 789, 792 (7th Cir. 2013) ("We join other circuits that take guidance from § 1631 in assessing whether to transfer a case from one court, like ours, having jurisdiction to another that would also have proper venue."); *Bibiano v. Lynch*, 834 F.3d 966, 973-74 (9th Cir. 2016) ("[W]here a court has subject matter jurisdiction but venue is not proper, federal circuit courts have inherent transfer authority and need not rely on 28 U.S.C. § 1631."); *Yang You Lee*, 791 F.3d at 1266 ("Federal circuit courts have inherent power to transfer a case over which they have jurisdiction but lack venue."); *Becker v. Comm'r*, 852 F.2d 524, 526 (11th Cir. 1988) (per curiam) ("[U]nder circumstances properly justifying the exercise of our equitable powers, we may transfer an appeal to the federal court of proper venue"); *Alexander v. Comm'r*, 825 F.2d 499, 501 (D.C. Cir. 1987) (per curiam) (holding that § 1631 did not "eliminate[] any inherent power in the courts to transfer a case to cure improper venue").

18

the parties, and waste of judicial resources. *Bibiano v. Lynch*, 834 F.3d 966, 974 (9th Cir. 2016); *see also Sarr v. Garland*, 50 F.4th 326, 333-34 (2d Cir. 2022) (identifying additional factors including "whether transfer would result in 'duplicative proceedings' in a sister circuit"). Here, transferring Castillo's petitions does indeed serve the interests of justice by curing the venue defect at issue today. In addition, the petitions have not yet been briefed, nor have the parties argued their positions on the merits, so, as the government points out, transfer now will not result in "duplicative proceedings, delay resolution, or waste judicial resources." (23-2123, Gov. Supp. Br. at 5 (Feb. 28, 2024).) And, as we hope is apparent from our earlier discussion on venue, Castillo's confusion in thinking that venue was proper here was not unreasonable.

In short, all things considered, transfer to the Sixth Circuit is fair and warranted.

## III.  CONCLUSION

For the foregoing reasons, we will transfer Castillo's petitions to the United States Court of Appeals for the Sixth Circuit.

19

PORTER, *Circuit Judge*, concurring in part and dissenting in part.

I agree with the majority that venue lies in the Sixth Circuit, but I draw that conclusion from the immigration statutes alone, not from the regulations governing administrative venue. I doubt that we are inherently empowered to transfer Castillo's petitions to the Sixth Circuit. Traditionally, federal courts would dismiss cases over which they had jurisdiction but lacked venue. For these reasons, I respectfully concur in part and dissent in part.

I

The majority follows some of our sister circuits in holding that an immigration judge "completes [removal] proceedings," 8 U.S.C. § 1252(b)(2), where administrative venue lies under 8 C.F.R. § 1003.20, *see, e.g.*, *Bazile v. Garland*, 76 F.4th 5, 13 (1st Cir. 2023). For Castillo's removal proceedings, administrative venue vested in Cleveland and was not subsequently changed, so the majority concludes that judicial venue lies in the Sixth Circuit. But administrative venue is "[a] convenience Congress did not write into . . . bills passed by both Houses and presented to the President for approval." *Madrid-Mancia v. Att'y Gen.*, 72 F.4th 508, 512 (3d Cir. 2023). I would reach the same result based only on the text of the immigration statutes.

Specifically, I would analyze § 1252(b)(2) based on an intratextual comparison of "proceedings" elsewhere in the immigration statutes. The majority determines where Castillo's removal proceedings "t[ook] place" by referring to administrative regulations, considering where "administrative venue vested" under § 1003.20(a) and whether it was subse-

1

quently changed under § 1003.20(b). Maj. Op. 12, 13. But the immigration statutes independently identify where removal proceedings under 8 U.S.C. § 1229a take place. As part of a notice to appear ("NTA") for removal proceedings, the government is required to inform aliens of "[t]he time and *place at which the proceedings will be held*." 8 U.S.C. § 1229(a)(1)(G)(i) (emphasis added). Castillo's NTA "ordered" him "to appear before an immigration judge" in Cleveland. A.R. 502. Subsequently, the immigration statutes permit the government to change the place of removal proceedings. In that event, the government is required to inform aliens in writing of "the new time or place of the proceedings." § 1229(a)(2)(A)(i). This kind of notice is dubbed a notice of hearing ("NOH"). *See, e.g.*, *Campos-Chaves v. Garland*, 144 S. Ct. 1637, 1643 (2024). Castillo received NOHs for each subsequent hearing conducted under § 1229a. Several of these NOHs directed Castillo to appear at "new time[s]" for removal proceedings. § 1229(a)(2)(A)(i). But none of the NOHs directed him to appear at a "new . . . place" other than Cleveland. *Id.* Castillo does not argue that his NTA or NOHs failed to notify him of the "place" of his removal proceedings or were otherwise deficient under § 1229(a). For these reasons, I agree with the majority that Castillo's removal proceedings took place in Cleveland.[1] But for future petitions, our

---

[1] The majority misunderstands the narrow basis for my partial concurrence. It faults me for not discussing the meaning of "completed," but I agree that the Immigration Judge completed the proceedings where they took place, regardless of her physical location. I disagree with the majority's reasoning for why Castillo's proceedings took place in Cleveland, which does not depend on the meaning of "completed." Moreover, my partial concurrence does not depend on whether

2

approaches may yield different results—if the "place" specified in the NTA and NOHs differs from administrative venue under § 1003.20.

## II

I also write separately because the majority concludes that we are inherently empowered to transfer Castillo's petitions to the Sixth Circuit. There is no statutory authority for a circuit court to transfer a case over which it has jurisdiction but for which venue lies elsewhere. Under 28 U.S.C. § 1631, federal courts may transfer cases where "there is a want of jurisdiction," not where there is jurisdiction but venue lies elsewhere. Federal district courts, but not circuit courts, may transfer cases where there is jurisdiction but venue lies elsewhere. 28 U.S.C. § 1406(a). Because we lack statutory authority to transfer Castillo's petitions, we directed the parties to submit supplemental briefs as to whether we have inherent power to do so. After reviewing the supplemental briefs, I am not convinced that we have such a power.

## A

The Constitution vests "the judicial Power of the United States" exclusively in the federal courts. U.S. Const. art. III, § 1. "[A]t the core of the judicial power" is "the authority to

---

"proceedings" refers only to removal hearings. Castillo's NTA and NOHs tell us where his removal proceedings took "place," §§ 1229(a)(1)(G)(i) and 1229(a)(2)(A)(i), regardless of whether "proceedings" refers to removal hearings or the removal process more generally. I agree with the majority that we need not resolve the latter issue.

3

determine the facts and the law in an individual case, and to render a final, binding judgment based on those determinations." *Jones v. Hendrix*, 599 U.S. 465, 487 (2023).[2] The Supreme Court has identified a few narrow limits on Congress's authority to control this core case-deciding function. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995) (forbidding Congress from "retroactively commanding the federal courts to reopen final judgments"); *Patchak v. Zinke*, 583 U.S. 244, 250 (2018) (Congress may not pass "a statute that says, 'In *Smith v. Jones*, Smith wins.'" (quoting *Bank Markazi v. Peterson*, 578 U.S. 212, 225 (2016))).

Aside from these limits, the Constitution vests Congress with significant power over the operation of the federal courts. Congress has the power to "make all Laws which shall be necessary and proper for carrying into Execution . . . all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, § 8. This "horizontal" aspect of the Necessary and Proper Clause expressly empowers Congress to pass laws for carrying into execution the federal judicial power. *See Wayman v. Southard*, 23 U.S. 1, 22 (1825) (entertaining "no doubt whatever" that Congress is empowered under the Necessary and Proper Clause "to make laws for carrying into execution all the judgments which the judicial department has power to pronounce"); *Hanna v. Plumer*, 380 U.S. 460, 472 (1965) ("[T]he constitutional provision for a federal court system

---

[2] In addition to the authority to issue binding judgments, the judicial power is often distinguished from the executive and legislative powers as "includ[ing] the power to authorize deprivations of private rights, such as through a criminal conviction or a finding of liability." William Baude, *Adjudication Outside Article III*, 133 Harv. L. Rev. 1511, 1522 (2020).

4

(augmented by the Necessary and Proper Clause) carries with it congressional power to make rules governing the practice and pleading in those courts[.]"); John Harrison, *Enumerated Federal Power and the Necessary and Proper Clause*, 78 U. Chi. L. Rev. 1101, 1121 (2011) ("[T]he so-called horizontal Necessary and Proper Clause . . . gives Congress power to carry into execution the judicial and executive powers.").

The Constitution does not expressly empower the federal courts to develop rules helpful for executing their case-deciding function. *See, e.g.*, Amy Coney Barrett, *Procedural Common Law*, 94 Va. L. Rev. 813, 846 (2008) ("The Constitution does not, on its face, grant federal courts power over procedure."). Nevertheless, federal courts have consistently asserted that they possess inherent powers to regulate their own operations, even without congressional authorization. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (noting that a "court may bar from the courtroom a criminal defendant who disrupts a trial" or "may dismiss an action on grounds of forum non conveniens" as examples of inherent judicial powers).

We have observed that "the notion of inherent [judicial] power has been described as nebulous[.]" *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 561 (3d Cir. 1985) (en banc). In *Eash*, we grouped inherent powers into tiers of descending importance. *Id.* at 562–64. Some inherent powers are those of "strict functional necessity" to the core case-deciding function, such as the contempt power. *Id.* at 562–63. Others are "necessary only in the practical sense of being useful[,]" such as the doctrine of forum non conveniens. *Id.* at 563–64. We upheld a district court's inherent power "to sanction errant attorneys financially . . . for conduct not rising to the level of contempt." *Id.* at 566. We did not clarify whether this power is

5

strictly necessary to the court's case-deciding function or merely useful. *Id.* at 564 ("Courts rarely have explained exactly what kind of authority they mean to invoke when using an inherent power to sanction an attorney."). But we suggested that the power is "reasonably necessary to deter abuse of the judicial process." *Id.* at 567. And while the particular sanction in *Eash* was not of "ancient origin," *Link v. Wabash R. Co.*, 370 U.S. 626, 630 (1962), we emphasized that it was related to "several species of sanctions on those who abuse the judicial process" with established roots in the federal court system, *Eash*, 757 F.2d at 561.

B

The inherent power that the majority recognizes is different from the power recognized in *Eash* for two important reasons. First, the inherent power to transfer because venue lies elsewhere is not essential (or even beneficial) to our case-deciding function. If we lack the inherent power to transfer, we must either retain jurisdiction over Castillo's petitions or dismiss them without prejudice. Neither option impairs our case-deciding function. If we retained jurisdiction over Castillo's petitions and reached their merits, we would be exercising our case-deciding function to its fullest extent. Immigration law is federal law and therefore is identical in the Third and Sixth Circuits, so we are competent to adjudicate Castillo's petitions even if venue lies elsewhere.[3] Alter-

---

[3] Of course, we may interpret the immigration statutes differently than the Sixth Circuit. *See* Maj. Op. 5 (discussing a difference in interpretation relevant to Castillo's petitions). But courts cannot change statutes by interpreting them. *See* John Harrison, *Federal Judicial Power and Federal Equity Without*

6

natively, we may be required to dismiss Castillo's petitions without prejudice. As discussed below, federal courts traditionally dismissed cases over which they had jurisdiction but not venue, so this outcome would not have been understood to conflict with our case-deciding function. Ultimately, the power recognized by the majority is arguably beneficial only in a broader sense—in effectuating Congress's intent for Castillo's petitions to be heard in the Sixth Circuit. But commentators have criticized the use of inherent powers that are not strictly necessary for issuing binding judgments in cases over which courts have jurisdiction. *See, e.g.*, Robert J. Pushaw, *The Inherent Powers of Federal Courts and the Structural Constitution*, 86 Iowa L. Rev. 735, 743 (2001) ("As the early Justices recognized . . . , the Necessary and Proper Clause authorizes Congress alone to determine whether or not to bestow beneficial powers."). We are not clearly authorized to assert such powers, but Congress is clearly authorized to confer them upon us, so I fear that we may be "aggrandizing . . . power at the expense of another branch." *Freytag v. Comm'r*, 501 U.S. 868, 878 (1991).

Second, the power the majority recognizes is inconsistent with the historical practices of federal courts. The first congressional authorization for change of venue was included in the Judicial Code of 1948. *See* Brainerd Currie, *Change of Venue and the Conflict of Laws*, 22 U. Chi. L. Rev. 405, 407 (1955). Federal courts previously had no power to transfer cases due to improper venue. *See* 17 *Moore's Federal Practice* § 111App.101 (Matthew Bender 3d ed.) ("Unlike the present rule enacted by the Judicial Code in 1948, . . . [n]o machinery existed to transfer cases."). Instead, "if a defendant made a

_____

*Federal Equity Powers*, 97 Notre Dame L. Rev. 1911, 1915 (2022) ("[T]he law is external to the courts.").

7

proper and timely objection to improper venue of an action, the district court, if it sustained the objection, had no alternative but to dismiss as to the objecting defendant." *Id.* (collecting cases). Thus, if a court had jurisdiction but lacked venue, there were two possible outcomes. If the defendant objected to venue, the court dismissed the action. But if the defendant waived his objection to venue by entering an appearance on the merits, the court exercised its jurisdiction and reached the merits. *See Interior Constr. & Improv. Co. v. Gibney*, 160 U.S. 217, 219 (1895) (describing venue as "a matter of personal privilege, which the defendant may insist upon, or may waive, at his election"). Transfer to a proper venue was not an option.

We recognized this principle in *Schoen v. Mountain Producers Corp.*, 170 F.2d 707 (3d Cir. 1948). There, the District Court dismissed because of improper venue. *Id.* at 709. On appeal, the plaintiff argued that the District Court erred in finding venue improper. *Id.* at 710. We recognized that 28 U.S.C. § 1406(a) allowed district courts to transfer actions where they had jurisdiction but not proper venue. *Id.* at 713. But § 1406(a) was not in force when "the judgment here under review was entered." *Id.* Absent § 1406(a)'s authority to transfer, "the nonresident defendants were entitled, under the law as it then stood, to the dismissal of the complaint as to them." *Id.* "Moreover the court *then had no power to transfer the case even if it had been asked to do so*." *Id.* (emphasis added). Thus, *Schoen* expressly rejected the possibility that courts have an inherent power to transfer where they have jurisdiction but not proper venue.[4]

---

[4] The majority criticizes my reliance on the "much earlier" *Schoen*, but *Schoen*'s reasoning is fully consistent with the modern understanding of how venue works. Maj. Op. 17 n.13.

8

More recently, as the majority recognizes, circuit courts have uniformly asserted the beneficial power to transfer cases where they have jurisdiction but not proper venue. *See, e.g.*,

Even before Congress's enactment of the Judicial Code of 1948, courts accurately distinguished between venue and jurisdiction. *See Neirbo Co. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 168, 169 (1939) (recognizing that jurisdiction limits a court's "power to adjudicate" while venue is a "litigant's convenience" that "may be lost by failure to assert it seasonably"); *Indus. Addition Ass'n v. Comm'r*, 323 U.S. 310, 313 (1945) ("Want of jurisdiction, unlike want of venue, may not be cured by consent of the parties; but when the court has jurisdiction, it has power to decide the case brought before it, even though the court having venue is one sitting in another circuit."). Our decision in *Schoen* adverted to this distinction, noting that "venue is a matter of personal privilege which a defendant may . . . waive at his election," 170 F.2d at 713, unlike jurisdiction, which "involves a court's power to hear a case, can never be forfeited," and "require[s] correction" sua sponte, *United States v. Cotton*, 535 U.S. 625, 630 (2002) (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908)). Thus, the Judicial Code of 1948's "provision . . . that improper venue is a waivable matter, *not jurisdiction*, and is waived unless timely and sufficient objection is made" is merely "declaratory of prior law." 17 *Moore's Federal Practice* § 110App.103[3] (Matthew Bender 3d ed.) (emphasis added) (citing 28 U.S.C. § 1406(b)). The basis for the uniform rule before the Judicial Code of 1948—that "a court was always required to dismiss an action where there was a mere defect in venue"—was not an antiquated conflation of jurisdiction and venue. *Hohensee v. News Syndicate, Inc.*, 286 F.2d 527, 529 (3d Cir. 1961).

*Yang You Lee v. Lynch*, 791 F.3d 1261, 1266 (10th Cir. 2015) ("Federal circuit courts have inherent power to transfer a case over which they have jurisdiction but lack venue."); *Sorcia v. Holder*, 643 F.3d 117, 122 (4th Cir. 2011) (same); *Dornbusch v. Comm'r*, 860 F.2d 611, 613–14 (5th Cir. 1988) (collecting cases). To my knowledge, the first decision recognizing this power was *Pac. Gas & Elec. Co. v. Fed. Power Comm'n*, 272 F.2d 510 (D.C. Cir. 1958). But the D.C. Circuit did not cite to any legal authority to justify its recognition of this power. It simply asserted that "we think that court had inherent power based on sound principles of judicial administration to transfer the case to this court[.]" *Id.* at 511. And as a subsequent panel of the Fifth Circuit recognized, the D.C. Circuit's ipse dixit is inconsistent with historical practice. *See Gulf Oil Corp. v. Fed. Power Comm'n*, 330 F.2d 824, 825 (5th Cir. 1964) ("At common law an objection as to venue goes in abatement[.]"); *see also Hyman v. City of Gastonia*, 466 F.3d 284, 287 (4th Cir. 2006) ("At common law, abatement is the equivalent of a dismissal, and it results from the defendant raising some procedural or formality error in the plaintiff's action.").

Altogether, I dissent from the majority's recognition of an inherent power to transfer. Between retaining jurisdiction over Castillo's petitions or dismissing them, I lean towards dismissal. Traditionally, courts dismissed cases when venue was improper and defendants objected to venue, without any express statutory authority to dismiss other than the venue statute itself. *Gibney*, 160 U.S. at 219. A venue statute was understood as creating a legal privilege for defendants not to defend against lawsuits in certain courts. *Id.* Understood in this way, § 1252(b)(2) gives the Attorney General the privilege of responding to an alien's petition in the circuit court where the Immigration Judge completed removal proceedings. He has a

10

corollary privilege not to respond to the petition in the other circuit courts. Here, venue is proper in the Sixth Circuit and the Attorney General objected to venue, thereby invoking his privilege not to respond to Castillo's petitions in the Third Circuit. As a result, we should enforce the Attorney General's statutory venue privilege as federal courts traditionally enforced such privileges—by dismissing Castillo's petitions, not by transferring them or by retaining jurisdiction and reaching their merits.

*     *     *

For these reasons, I respectfully concur in part and dissent in part.

11